

FILED

Oct 25 2013, 5:50 am

CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DEBRA LYNCH DUBOVICH**
Levy & Dubovich
Merrillville, Indiana

ATTORNEY FOR APPELLEE:

**PAUL A. LEONARD**
Burke Costanza & Carberry LLP
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CARRIE A. KRAMPEN, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No.  45A05-1212-DR-628 |
| | ) | |
| JAMES J. KRAMPEN, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE LAKE CIRCUIT COURT
The Honorable George C. Paras, Judge
The Honorable Michael A. Sarafin, Magistrate
Cause No. 45C01-0209-DR-593

**October 25, 2013**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

Carrie Krampen, a/k/a Carrie Carpenter ("Carrie") appeals the trial court's grant of a petition to modify child support and provide an accounting of future child support payments filed by James J. Krampen ("James"), Carrie's ex-husband.

We reverse and remand.

## ISSUES

1. Whether the trial court's findings of fact and conclusions of law supported the order of an accounting of future child support expenditures under Ind. Code § 31-16-9-6.

2. Whether the trial court's findings of fact and conclusions of law supported the finding of a substantial and continuing change in circumstances justifying a reduction of child support.

## FACTS

James and Carrie were married on June 8, 1991; four children were born during the marriage. On or about August 2, 1999, James filed a petition for dissolution of the marriage. James and Carrie participated in mediation and, on June 19, 2001, the trial court approved a settlement agreement providing, in relevant part, that James pay $835.00 per week in child support for all four children.[1] The agreement also stated that both parties would share in education expenses based on percentages of their total combined income.

The Judicial Administration Committee amended the child support guidelines in 2009 with those amendments going into effect January 1, 2010. Significant in those

---

[1] This amount was later amended to approximately $965.00 per week.

amendments were changes in the schedules determining the basic child support obligation, particularly when dealing with high income earners.[2] On January 27, 2010, Carrie filed a petition to modify child support, alleging a substantial and continuing change. The parties participated in mediation and reached an agreement on or about November 10, 2010, increasing the child support order from $962.68 per week to $3,000.00 per week for the children retroactive to the January filing date. James made a "catch up payment" of $72,761.43 to comply with the order.

Carrie is a veterinarian who worked part-time in a local office. In the fall of 2010, Carrie began preparing to open her own veterinarian practice by remodeling a home she formerly used as rental property. In May of 2011, Carrie opened Your Hometown Animal Hospital in Crown Point.

On March 19, 2012, James filed a petition to modify his child support payment, alleging that Carrie used child support funds to establish and subsidize her veterinarian clinic. He asserted that the opening of Carrie's veterinarian office and her alleged use of child support funds were a substantial and continuing change in circumstances necessitating the modification of child support. James requested an accounting pursuant to Ind. Code § 31-16-9-6 and the establishment of a constructive trust.

---

[2] Prior to the 2009 amendments, the combined weekly adjusted income on the "Guideline Schedules for Weekly Support Payments" only included amounts up to four thousand dollars ($4,000.00) per week. If income for both parents exceeded $4,000.00 per week, the guidelines applied a formula that resulted in support orders that did not increase proportionately with an increase in income. The 2009 amendments set the maximum income on the schedule at ten thousand dollars ($10,000.00) per week. For incomes above $10,000.00, a child support order would increase at a fixed percentage rate depending on the number of children.

On October 4, 2012, the trial court held a hearing on James's petition for modification. Neither James nor Carrie testified. Instead, counsel submitted sworn depositions, exhibits, and presented arguments to the court. During his deposition, James admitted that the basic needs of his children (food, clothing, and shelter) were being met:

Q. All right. So do you think she's spending too much on housing or too little.

A. I personally think—on housing?

Q. On housing for your children?

A. The amount or the type?

Q. The amount she's spending?

A. Well, if she's only spending $1,500 a month on the –on her mortgage, like she said she was, and insurance and whatnot like she's put in her financial disclosures, I would say that's almost a low amount. Plus you have to add in the thing, the build-out that she did for the $70,000. So I think that's a good house at that point for the money.

Q. So you have no problem with what she's spending on housing, she's spending the right amount on that?

A. Yeah, if she—if all of those numbers pan out, I'm fine with it.

Q. Okay. And so you're fine with the housing. How about what she spends on the kids' clothes, is she spending too much, too little, in your opinion?

A. Now or in the past or what do you want to know?

Q. Since January of 2010 forward, too much, too little, about the right amount?

A. About the right amount from what I – I mean, I know how much those clothes cost because we buy them for them too. So they're not coming in with Gucci and Chanel and stuff like that. It's just Abercrombie & Fitch,

4

you know, it's the Aero. It's the stuff that every teenage kid wears, which is fine.

\* \* \* \*

Q. So you have no argument about the amount she's spending on clothes or the type of clothes she's buying for the children?

A. No, I don't know. To be honest, she can't even answer how much she spends, so I don't know. I don't—I don't know — the clothes look fine to me, they look fine, they're clothed. I know those clothes. Those clothes don't cost that much, so I don't know what she's spending everything else on, but the clothes are fine.

Q. What about the kids' food, do you have any complaints with what she's feeding the kids or how she's feeding them?

A. No. They eat.

Q. What is that supposed to mean, they eat?

A. Well, they eat. They are not starving, that's what I mean. It's not like, dad, can you please bring food over. There's food in the house. I don't know—they've never complained to me, but they eat food in the house. Probably a lot of cereal and things of that nature just like every teenage kid does just like they eat at my house.

(James's Dep. 48-50). Further, in support of his petition, James submitted Carrie's 2011 income tax return, which showed an adjusted gross income of negative seventy-two thousand, one hundred forty-eight dollars (-$72,148). James also submitted checks from Carrie's bank account; James alleged that the checks submitted were expenses for Carrie's business and that child support funded those checks. The trial court entered findings of fact and conclusions of law granting James's petition on November 19, 2012. The trial court's relevant conclusions consisted of the following:

30. Father's concerns as to Mother's use of child support are well founded. While Father admits that the children are well cared for and that

5

he does not object to all of Mother's use of the child support he pays or has paid, Father's primary concern, that child support be used for the support of the children and not for the subsidization of Mother's business activities is supported by the evidence before the Court. Mother simply cannot meet her various monthly obligations, both those incurred directly by her and through her companies, through the methods she claimed she utilizes (draws on her [line of credit] and from the Wells Fargo Loan); indeed, Mother's own testimony demonstrated that the funds that Animal Hospital pays to [her real estate company] are insufficient to meet the obligations that [the real estate company] is supposedly meeting with such funds and Mother failed to produce any documentary evidence of [the line of credit] or the Wells Fargo Loan; of loan draws upon the [the line of credit] or the Wells Fargo Loan; or even deposits of gross receipts from her business activity into her personal checking account. Finally, Mother asserted that all of her obligations are current yet [she] has no discernible earned income except for the child support paid by Father.

31. The Court, having considered the evidence before it finds and concludes that Mother has in fact made use of child support funds paid by Husband not for the direct benefit of the Parties' children but for the benefit of Mother's business enterprise in the total amount of $17,698.12. Such use of child support funds by Mother is not in keeping with her role as trustee of the child support funds for the benefit of the Parties' children.

32. Father has established that a substantial change in circumstances has occurred such that the terms of the current support order are unreasonable in that Mother has utilized child support payments received for purposes other than support of the Parties' children, specifically, Mother has used child support funds to meet debts and obligations that she has incurred either directly or through her companies. Moreover, Father has demonstrated that a deviation from the Child Support Guidelines is warranted due to Mother's use of child support funds in the foregoing manner; the standard of living enjoyed by the Parties' children will not suffer if the reduction in child support sought by Father is granted by this Court.

33. Father's request for a modification of child support set forth in the Petition is GRANTED; Father's child support obligation is hereby reduced to the total annual amount of $132,302.00 for a weekly child support obligation of $2,544.27, effective November 23, 2012.

34. All prior Income Withholding Orders entered in this case are VACATED. Father shall prepare and submit an Amended Income

6

Withholding Order to this Court for entry within twenty-one (21) days of the entry of this Order setting forth Father's new weekly child support obligation.

35.     The Court finds that Father has met his burden under I.C. §31-16-9-6 [sic] and demonstrated reasonable cause to believe that child support is not being used for the support of the Parties' children and the Court hereby orders that Mother shall provide an accounting to the Court pursuant to I.C. §31-16-9-6 [sic] upon the terms and conditions set forth herein.

* * * *

37.     (c.) Mother shall provide the foregoing documentation by the last day of each month following the month being reported; thus by way of example, for January 2013; Mother shall provide the foregoing required documentation by February 28, 2013.

        (d.) Mother shall provide the accounting required by this Order for a period of nine (9) months, commencing with the date of the entry of this Order.

38.     Father's request for injunctive relief against Mother barring her from improperly utilizing child support funds set forth in the Petition is GRANTED as follows; Mother is hereby enjoined and restrained from using child support funds to pay any and all obligations or debts of Animal Hospital or [her real estate company], including the following:  the Wells Fargo Loan and all monthly amounts paid by Animal Hospital to [her real estate company].

39.     Father's request for the imposition of a constructive trust upon child support funds paid by him set forth in the Petition is DENIED.

(App. 22-24).  Carrie filed her notice of appeal on December 10, 2012.  On February 5, 2013, Carrie requested that the trial court stay its order of an accounting pending her appeal; the trial court denied her motion.

## DECISION

Carrie claims that the trial court erred in:  (1) ordering an accounting of future child support expenditures; and (2) modifying the child support James pays for the

7

children. Specifically, she claims that the evidence presented did not support the conclusion that she misappropriated child support funds. She further argues that even assuming that the misuse of child support occurred, the remedy is not a reduction in child support.

Where the accounting and modification of child support is an issue and the trial court enters findings of fact and conclusions of law after holding a summary hearing, we apply the following two-tiered standard of review:

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. We will set aside the trial court's findings only if they are clearly erroneous—that is, when a review of the record leaves us firmly convinced that a mistake has been made. Although we defer to a trial court court's ability to find the facts, we do not defer to conclusions of law, and a judgment is clearly erroneous if it relies on an incorrect legal standard.

*Mertz v. Mertz*, 971 N.E.2d 189, 192 (Ind. Ct. App. 2012).[3] We address the issues of accounting of future child support payments and modification of child support separately.

1. Accounting of Future Child Support Expenditures

James contends that Carrie's adjusted gross income of -$72,148 established that she had no income in 2011 and 2012 outside of the child support he paid. James further claims that the checks he submitted show that Carrie is spending child support funds on her business. Carrie, in turn, claimed in her deposition testimony that she started and

---

[3] Carrie also argues that de novo review is appropriate because the trial court held a summary hearing and "the Court of Appeals stands in the same position as the trial court in terms of assessing the written deposition testimony and evaluating the summary presentation by the lawyers." (Carrie's Br. 16). Though we find support for Carrie's position, (*see Hunter v. Klimowicz*, 867 N.E.2d 626, 628 (Ind. Ct. App. 2007); *Title Servs., LLC v. Womacks*, 848 N.E.2d 1151, 1154 (Ind. Ct. App. 2006), *trans. denied*), we reach the same conclusion under the typical standard of review.

subsidized her veterinarian practice with funds from a business loan and draws from a line of credit on her residence.

We will not reverse a trial court's order for an accounting of future child support expenditures absent an abuse of discretion. *Olive v. Olive*, 650 N.E.2d 766 (Ind. Ct. App. 1995). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Kovenock v. Mallus*, 660 N.E.2d 638, 640 (Ind. Ct. App. 1996), *trans. denied*.

"Quite commonly noncustodial parents request or even demand, that the custodial parent provide an accounting for how support money is spent." Ind. Child Support Guideline 9. "The Indiana Legislature recognized that an accounting may sometimes be needed when it enacted [Ind. Code § 31-16-9-6]." *Id*. Indiana Code § 31-16-9-6 states that:

> At the time of entering an order for support or at any subsequent time, the court may order, upon a *proper showing of necessity*, the spouse or other person receiving support payments to provide an accounting to the court of future expenditures upon such terms and conditions as the court decrees.

(emphasis added).

A trial court may issue an order for an accounting "upon a showing of necessity." *Olive*, 650 N.E.2d 766. However, when a child's basic needs are being met, a "disagreement between the parties concerning whether adequate resources are being devoted to the [child's] particular 'wants' as distinct from their actual needs is insufficient, by itself, to support a showing of necessity for an accounting." *Kovenock*, 660 N.E.2d at 641.

9

In *Kovenock*, we addressed similar allegations regarding a custodial parent's use of child support payments to cover expenditures that were not for the benefit of the children. In that case, the noncustodial parent "was concerned that child support payments were being used to subsidize a business and the living expenses of Wife and her present spouse." *Id.* at 640. In addition, the noncustodial parent asserted that the children were not enjoying the same standard of living they would have enjoyed had the marriage not been dissolved. *Id.* The noncustodial parent claimed that the custodial parent, while reporting a household income of between $18,000 and $19,000, had traveled to Europe and purchased two vehicles since the dissolution of their marriage. *Id.* The noncustodial parent did not assert that the basic needs of the children were not being met. *Id.* Instead, he claimed that one child did not get "swimming lessons and that both children were sometimes dressed in 'shabby' clothes." *Id.* at 641.

In that case, we noted that an accounting is a serious undertaking because of the "difficulties encountered in the allocation of costs attributable to items such as food, utilities, and mortgage payments along with the burden of keeping a record of all expenditures." *Id.* "'A custodial parent may be able to account for direct costs (clothing, school expenses, music lesson etc.) but it should be remembered that it is extremely difficult to compile indirect costs (a share of housing, transportation, utilities, food, etc.) with any degree of accuracy.'" *Id.* (quoting *Olive*, 650 N.E.2d at 767-68). For these reasons, the Committee's commentary following Indiana Child Support Guideline 9 recommends that an accounting not be used routinely in child support orders. As a result, we held that when a child's basic needs are being met, it is insufficient to show merely

10

that there is a disagreement about whether sufficient resources are being spent on a child's "wants" as opposed to actual needs. In other words, a party must be able to show evidence of impropriety, such as the misappropriation or dissipation of support payments, that negatively impacts the child's basic needs. *Id.*

In this case, the trial court concluded that Carrie had no income, could not meet her monthly obligations in the manner she claimed, and that the evidence submitted showed that Carrie misused child support funds. Having reviewed the record before us, we cannot conclude the evidence and law supports the trial court's conclusions.

First, we first note that the Child Support Guidelines do not support the trial court's conclusion that Carrie had no earned income for 2011 except for child support paid by James. James relied on Carrie's negative adjusted gross income on her tax return to support his claim of Carrie's lack of income outside of child support. However, Child Support Guideline 3(A)(2) regarding the calculation of weekly gross income for self-employed parents, states the following:

> Weekly Gross Income from self-employment, operation of a business, rent, and royalties is defined as gross receipts minus ordinary and necessary expenses. In general, these types of income and expenses from self-employment or operation of a business should be carefully reviewed to restrict the deductions to reasonable out of pocket expenditures necessary to produce income. These expenditures may include a reasonable yearly deduction for necessary capital expenditures. *Weekly Gross Income from self-employment may differ from a determination of business income for tax purposes.*

(Emphasis added). Carrie's 2011 tax filing clearly shows that she had negative income for tax purposes. However, many of the business deductions claimed by Carrie would not be allowed when calculating her income for child support purposes. For example,

11

Child Supp. G. 3(A)(2) would probably not allow Carrie to claim over thirty-five thousand dollars in depreciation or over fifty-four thousand dollars in unspecified "other expenses." (James's Exhibit A). Therefore, for child support purposes, the trial court erred in concluding that Carrie had no income outside of the child support she received.

Further, the evidence does not support the finding that Carrie cannot meet her obligations in the manner she claims. The trial court stated in its findings that the mortgage payment on Carrie's business property was two thousand four hundred dollars ($2,400). During her deposition, Carrie estimated the amount of many of her monthly obligations, but she was not able to provide any amount for the mortgage on her business property. The only source in the record for this amount was James's counsel during argument.[4] In addition, Counsel's argument during the hearing also appears to be the source of the total amount of funds which Carrie allegedly diverted to support her practice. The trial court found in its order that Carrie had diverted $17,698.12. James alleged that the total amount of misused child support was approximately $18,800. However, the total amount of challenged checks actually submitted into evidence by James totaled $11,470.92.

We note that arguments made by counsel are not evidence trial courts may consider when making factual determinations. *In re K.H.*, 838 N.E.2d 477 (Ind. Ct. App. 2005). Seeing no other evidence in the record, the trial court's finding as to the amount

---

[4] During argument, James's counsel stated the following: "Dr. Carpenter has testified that her veterinary practice, Your Hometown Animal Hospital, LLC, pays approximately four thousand dollars a month to [her real estate company] for rent. [Her real estate company] then pays twenty-four hundred dollars a month toward a mortgage. The mortgage is against the business property." (Tr. 30-31).

supposedly misused by Carrie and her ability to meet her monthly obligations cannot stand.

Finally, considering our holding in *Kovenock* and the evidence in the record, the trial court erred in concluding that Carrie misused child support payments she received. As previously noted, James essentially admitted in his deposition, that his children's basic needs are being met despite his allegation of Carrie's malfeasance with child support funds. Notwithstanding this admission, the evidence he submitted does not support his claim of misappropriation. Carrie introduced into evidence bank statements corresponding with some of the challenged checks that James submitted into evidence. Those banks statements show large deposits into Carrie's checking account in addition to what she received from James for child support. These deposits substantially exceed the checks offered by James to support his position that Carrie diverted child support funds. During argument, James's counsel argued that the large deposits came from James reimbursing Carrie for extracurricular activities. However, James submitted no evidence to substantiate that claim. We acknowledge that Carrie's deposition testimony is the only evidence that some of the excess funds are from her line of credit. However, James's counsel conceded during argument that "[Carrie] has these credit facilities." (Tr. 100). *Id*. While statements of counsel are not evidence, "[a] clear and unequivocal admission of fact by an attorney is a judicial admission which is binding on the client." *In re K.H.*, 838 N.E.2d at 480 (quoting *Parker v. State*, 676 N.E.2d 1083, 1086 (Ind. Ct. App.

13

1997)).[5]  Hence, the trial court erred in finding that Carrie misappropriated child support funds.

Accordingly, having examined the record, the trial court's findings are not supported by the evidence, and the findings do not support its conclusions.  James did not meet his burden in showing a necessity for the accounting of future child support expenditures.

2. Modification of Child Support

James contends that Carrie's opening a veterinarian practice and allegedly using child support funds to support her practice constitutes a substantial and continuing change that warranted reducing the amount of child support he pays.  James further claims, assuming that a misuse of funds occurred, that because the standard of living of the children has not been affected, reducing the amount of the child support order is justified. We disagree.

Under Indiana Code § 31-16-8-1, an order for child support my be modified as follows:

> Provisions of an order with respect to child support . . . may be modified or revoked.  Except as provided in section 2 of this chapter, modification may be made only:
>
>> (1) upon showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
>>
>> (2) upon a showing that:

---

[5] Both parties agreed to present evidence in a summary fashion.  However, it is the summary nature of the hearing that lead both parties to make claims that were only substantiated by arguments and not evidence. While we understand the desire of the attorneys and the trial court for expediency and efficiency, these concerns must yield to the proper presentation and admission, not oral summation, of all evidence needed to arrive at the correct conclusion.

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

Whether the asserted change in circumstances is substantial and continuing as to make the terms of a support order unreasonable is a mixed question of law and fact. *Miller v. Sugden*, 849 N.E.2d 758, 760 (Ind. Ct. App. 2006), *trans. denied.* "To the extent it is a question of law, 'it is the duty of the appellate court to give it de novo review—and doing so promotes the values of consistency, predictability, and enunciation of standards that curb arbitrariness.'" *Id.* at 761 (quoting *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 941 (Ind. 2005)).

Typically, changes in parents' income, emancipation, increase in educational expenses, and changes in custody of a child qualify as substantial and continuing circumstances that justify modifying a support order. *See Borum v. Owens*, 852 N.E.2d 966 (Ind. Ct. App. 2006); *Borth v. Borth*, 806 N.E.2d 866 (Ind. Ct. App. 2004); *Rice v. Rice*, 460 N.E.2d 1228, (Ind. Ct. App. 1984). However, the question of whether misuse of funds by the custodial parent creates a substantial and continuing change is an issue of first impression not addressed by our court. Yet, we need not address it. Having just found that there was insufficient evidence to support a finding that child support had been misappropriated, the trial court's modification of child support on that basis was also inappropriate.

We reverse and remand with instructions for the trial court to enter a new child support order consistent with this opinion and the Child Support Guidelines.

Reversed and remanded.

VAIDIK, J., concur.

KIRSCH, J., dissent.