

**FILED**

Jan 11 2019, 8:48 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Karen A. Wyle
Bloomington, Indiana

ATTORNEYS FOR APPELLEES

Patrick L. Jessup
Anthony L. Kraus
YODER KRAUS & JESSUP, P.C.
Kendallville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| D.G.,<br>*Appellant,*<br><br>v.<br><br>W.M., et al.,<br>*Appellees.* | January 11, 2019<br><br>Court of Appeals Case No.<br>18A-MI-2115<br><br>Appeal from the DeKalb Circuit Court<br><br>The Honorable Randy Coffey, Special Judge<br><br>Trial Court Cause No.<br>17C01-1507-MI-93 |

**Bailey, Judge.**

# Case Summary

D.G. ("Mother") appeals the denial of her motion to terminate an order that her four children ("the Children") engage in monthly visitation with their paternal grandparents ("Grandparents") and the trial court's finding that she is in contempt of court. We affirm.

# Issues

Mother presents two consolidated and restated issues for review:

I.     Whether the trial court abused its discretion by denying her motion to terminate grandparent visitation;[1] and

II.     Whether the trial court abused its discretion in the issuance of a contempt order.

---

[1] Although Mother frames her issues with reference to an abuse of discretion standard of review, she asserts (citing *Krampen v. Krampen*, 997 N.E.2d 73, 79 n.3 (Ind. Ct. App. 2013), *trans. denied*), that de novo review is appropriate because the trial court conducted a summary hearing. In *Krampen*, no testimony was heard; counsel submitted sworn depositions and exhibits and presented argument. *See id.* at 76. Thus, the appellate court was arguably in a position of assessment like that of the trial court. Here, however, the Guardian ad Litem testified. Also, Mother and Grandparents repeatedly affirmed to the trial court that the compilation of relevant facts as presented by their respective counsel were the factual assertions of the parties. The hearing, although summary, produced more than a paper record.

Although summary proceedings are not precluded, we disapprove of counsel summations as opposed to testimony where a trial court must determine the best interests of a child. Unlike child support matters of dollars and cents, where the issues allow for summation adopted and approved by parents, resolution of a visitation issue involves a need for considering the weight of the testimony and the credibility of the witnesses.

# Facts and Procedural History

[3] On March 1, 2016, Grandparents were awarded unspecified visitation time with the Children, who had previously lived with Grandparents for several years. One month after the visitation order was entered, Mother filed a motion to reconsider, which the trial court treated as a motion to correct error. The motion to correct error was granted in part, and the trial court entered a revised order specifying that visitation was to take place one day per month, on the first Friday. With a few exceptions, the scheduled visits did not occur.[2]

[4] Grandparents filed motions for a rule to show cause why Mother should not be held in contempt on June 14, 2016, July 21, 2017, August 14, 2017, November 13, 2017, November 27, 2017, December 5, 2017, January 11, 2018, January 24, 2018, February 22, 2018, March 16, 2018, March 29, 2018, June 11, 2018, July 12, 2018, and August 9, 2018.[3] The trial court entered some coercive orders, including an order that Mother be jailed for twelve days, and an award of $1,000.00 to Grandparents for the payment of attorney's fees.[4] There was no

---

[2] Mother asserts that she "followed the court order from December 2016 through June 2017." Appellant's Brief at 15.

[3] The Chronological Case Summary indicates that an additional motion for a rule to show cause was filed by Grandparents on September 10, 2018, after the appealed orders were entered.

[4] Over the years, successive judges were assigned to this matter. A successor judge declared one order of contempt void for a lack of due process but, upon a motion for reconsideration, declared the order voidable as opposed to void. In any event, no order of contempt had been enforced against Mother prior to the entry of orders giving rise to this appeal.

resumption of visits, Mother was not incarcerated, and Mother did not pay Grandparents' attorney's fees.

[5] On March 20, 2018, Mother filed a petition seeking to terminate the grandparent visitation. On April 26, 2018, the trial court appointed a Guardian ad Litem ("GAL") for the Children. On June 11, 2018, the trial court issued an order that Mother appear at a hearing on June 27, 2018 to show cause, if any, why she should not be held in contempt of court. On June 15, 2018, the trial court issued an order consolidating the contempt and modification matters for a joint hearing to be conducted on June 27, 2018.

[6] Mother, Grandparents, and the GAL appeared for the hearing. Although Mother and Grandparents were placed under oath, they agreed that they would not present individual testimony. Rather, their respective counsel would summarize each party's asserted facts and the parties would be afforded the opportunity to affirm or protest any stated fact. The GAL, who had submitted a written report, testified. She opined that grandparent visitation should continue, but only until the Children's father was awarded unsupervised parenting time consistent with the Indiana Parenting Time Guidelines ("Guidelines").

[7] On July 9, 2018, the trial court entered a brief order "declin[ing] termination of grandparent visitations." Appealed Order at 1. On August 20, 2018, the trial court issued an order finding Mother in contempt of court and ordering that she serve 180 days in the DeKalb County Jail. The commitment order was to be

stayed if Grandparents' counsel notified the trial court that Mother had delivered and retrieved the Children as directed under previous orders. Mother was ordered to pay $14,000.00 of Grandparents' attorney's fees. Mother now appeals.

# Discussion and Decision

## Petition for Modification

[8] The Grandparent Visitation Act provides in relevant part: "The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child." Ind. Code § 31-17-5-7. A court will be found to have abused its discretion only when "its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law." *In re Paternity of M.F.*, 956 N.E.2d 1157, 1162 (Ind. Ct. App. 2011).

[9] At the summary hearing, the trial court was informed of the following facts and circumstances. Grandparents had attempted on several occasions to exercise visitation without success. Sometimes, the Children were not home. At other times, some of the Children were present and would approach Grandparents' vehicle to verbally decline visitation. Mother asserted that she had packed the Children's bags. She further claimed that she had intermittently punished the Children for their non-compliance, although it was against the advice of a mental health counselor with whom she had consulted. The GAL

characterized Mother as uncooperative[5] and opined that grandparent visitation was in the Children's best interests so long as their father did not have Guidelines parenting time.

[10] Mother argues that, considering hers and the Children's objections to visitation,[6] the trial court should have required Grandparents to bear the burden of proving that visitation remained in the Children's best interests. *In re Adoption of A.A.*, 51 N.E.3d 380 (Ind. Ct. App. 2016), involved the identical claim, that a grandparent must demonstrate continuing best interests upon a parent's petition for modification. We concluded otherwise:

> [Parents] seek to shift the burden to Grandparents to show that grandparent visitation is still in Children's best interests.
>
> We have found no Indiana case that specifically speaks to the burden of proof on a petition to modify an existing order of grandparent visitation rights. However, our courts have addressed the burden of proof necessary to modify an existing order of *parenting* time rights following an initial custody determination. Using nearly identical language to the

---

[5] One focus was upon Mother's text message communication with Grandparents. Grandparents claimed – and Mother did not deny – that, on multiple occasions, Mother disseminated vulgar, profane, threatening, or sacrilegious responses to Grandparents' text message overtures for visitation. For example, Mother called Grandparents "pathetic losers" and used phrases such as "Douchebag, they treat my kids like s----" and "you think this is a m---- f------g game?" (Tr. at 9, 11.) She also forwarded photographs with threats of Grandparents' damnation to hell.

Also, Mother did not deny the assertion that her current husband attempted to adopt the Children in another state, claiming that their father had consented; after the father appeared to contest that representation, the adoption matter was dismissed.

[6] Mother's argument assumes that the trial court found credible her assertion that none of the Children wished to participate in the court-ordered visitation.

grandparent visitation statute, Indiana Code section 31-17-4-2 provides, in relevant part: "The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child." . . .

The similarity in statutory language suggests that we place the burden on modification of grandparent visitation rights with the same party as on modification of parenting time rights. Even though the petitioning grandparent carries a high burden on the initial petition for grandparent visitation rights, the petitioner seeking a subsequent change in a grandparent visitation order bears the burden of showing the order should be modified. As the moving party, Parents thus bore the burden of demonstrating that modification of the existing visitation order would serve Children's best interests.

*Id.* at 389-90. Mother contends that *In re A.A.* was decided in error, Grandparents properly had to show that, given current circumstances, visitation was in the Children's best interests, and they failed to do so.

[11] Mother correctly observes that, in cases involving nonparent custody or guardianship, courts apply a strong presumption that a child's interests are best served by placement with a parent. *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 458 (Ind. 2009). Here, we are not confronted with a child custody dispute or an initial petition for grandparent visitation in which the factors enunciated in *McCune v. Frey*, 783 N.E.2d 752 (Ind. Ct. App. 2003), would apply.[7] Mother

---

[7] The factors "commonly known as the *McCune* factors" are: (1) the presumption that a fit parent's decision about grandparent visitation is in the child's best interests; (2) the special weight that must be given to a fit parent's decision regarding non-parental visitation; (3) some weight given to whether a parent has denied or

has put forth no persuasive argument that *In re A.A.* was wrongly decided. Moreover, even if Mother could prevail on her placement-of-burden argument, she ignores the GAL testimony and report when she claims there is a lack of evidence of the Children's best interests.

[12] Finally, we observe that Mother's proffered changed circumstances were traceable to her own conduct. At the modification hearing, she explained that she had changed her initial belief that visitation was in the Children's best interests and, over time, her relationship with Grandparents had become toxic. She described as "stale" the evidence that Grandparents and the Children had shared pleasant activities in the past, because Grandparents "haven't seen the grandchildren in a year." (Tr. at 22.) She thus invited the trial court to reward her persistent non-compliance.[8] Here, as in *In re A.A.*, there is a failure to acknowledge and differentiate that which is a "direct result of [parental] contumacious conduct." 51 N.E.3d at 390. Mother has not shown that the trial court abused its discretion in denying the petition to terminate Grandparents' visitation rights.

---

simply limited visitation; and (4) whether the grandparent has established that visitation is in the child's best interests. *In re A.A.*, 51 N.E.3d at 389.

[8] Mother's attorney took the position, affirmed by Mother, that "parents are permitted to alienate third parties, and that's what grandparents are." (Tr. at 22.)

# Contempt of Court

[13]     The trial court found that Mother "repeated[ly] and without cause violated the Court's order for grandparent visitation. She does so willfully, in order to impede and ignore this Court's requirements." Appealed Order at 2. The court observed that Mother had previously been held in contempt of court and ordered that she be incarcerated for 180 days and pay, within 90 days, the sum of $14,000.00 to Grandparents' attorney "for contributions towards fees expended in pursuing this Court's contempt finding." *Id.* at 3.

[14]     Whether a party is in contempt of court is a matter within the trial court's discretion. *In re M.F.*, 956 N.E.2d at 1162. A court's finding of contempt will be reversed only for an abuse of that discretion. *Id.* After a party has been found in contempt of court, monetary damages may be awarded to the injured party, and this determination of damages is also within the trial court's discretion. *In re A.A.*, 51 N.E.3d at 387. On review of a contempt order, we consider the evidence and reasonable inferences that support the trial court's judgment, and we neither reweigh the evidence nor judge the credibility of witnesses. *Norris v. Pethe*, 833 N.E.2d 1024, 1029 (Ind. Ct. App. 2005).

[15]     A party may be punished for contempt of a trial court's order when (1) there is an order commanding the accused to do or refrain from doing something, and (2) the party acted with willful disobedience. *Id.* Even an erroneous order must still be obeyed. *Crowl v. Berryhill*, 678 N.E.2d 828, 830 (Ind. Ct. App. 1997).

"A party's remedy for an erroneous order is appeal and disobedience of the order is contempt." *Id.*

[16] Mother summarily argues that she made "reasonable efforts" to ensure the Children's compliance but the Children were uncooperative. Appellant's Brief at 33. Mother bears the burden of showing that her violation was not willful. *Norris*, 833 N.E.2d at 1029. Grandparents were systematically deprived of the visitation awarded to them. There was evidence that Mother made – at best – some token efforts toward compliance. At times, she permitted some of the Children to leave their house (unaccompanied by Mother) and approach Grandparents' vehicle. They then declined visitation. Mother essentially took the position that her minor children were in control. She claimed to have made some efforts to punish the Children, at least intermittently, but the trial court was not required to credit this evidence. *See Fultz v. State*, 849 N.E.2d 616, 623 (Ind. Ct. App. 2006) (recognizing that a fact-finder may disregard self-serving testimony lacking credibility), *trans. denied*. We find no abuse of discretion in the trial court's finding of contempt.

[17] Mother also argues that the contempt order was entered primarily to punish her, and she has no "realistic opportunity" to purge herself of the contempt finding. Appellant's Brief at 37. "[I]t is within the inherent power of the trial court to fashion an appropriate punishment for the disobedience of the court's order." *Bechtel v. Bechtel*, 536 N.E.2d 1053, 1056 (Ind. Ct. App. 1989). In civil contempt proceedings, sanctions may be imposed both to coerce behavior and to compensate an aggrieved party. *Norris*, 833 N.E.2d at 1031. The fine is to be

paid to the aggrieved party, and imprisonment is for the purpose of coercing compliance. *Id.*

[18] Here, Mother's noncompliance forced Grandparents into protracted litigation and they filed fourteen motions for a rule to show cause, as Mother remained defiant. Mother has made no assertion that $14,000.00 is an unreasonable amount of attorney's fees to have been incurred in these circumstances. Mother does, however, argue that the trial court's order afforded her only an illusory right to purge herself of contempt. The "Finding of Contempt and Commitment Order" entered on August 20, 2018 includes a commitment order for Mother's incarceration for 180 days, but it also provides that Mother "may purge herself of contempt" and "may do so by following all directives and orders of this Court as heretofore made." Appealed Order at 2. The order includes the following language as to staying the commitment:

> Should [Mother] deliver and retrieve the children as directed under the previous order(s), counsel for [Grandparents] shall notify the Court of the same. Upon such notification, the Court shall stay the heretofore-entered commitment order.

Appealed Order at 2. Mother apparently believes that the stay of incarceration is conditioned upon the Grandparents' good will toward her and that they may fail to report her future compliance. We observe that the notification requirement was placed upon counsel, an officer of the court. We do not agree with Mother that this deprives her of a reasonable opportunity to purge herself of contempt.

# Conclusion

[19] The trial court's order denying Mother's petition to terminate grandparent visitation was not an abuse of discretion. The trial court did not abuse its discretion in finding Mother in contempt of court, ordering her incarceration, and ordering her payment of $14,000.00 of Grandparents' attorney's fees as a sanction.

[20] Affirmed.

Bradford, J., and Brown, J., concur.