# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



FILED

Jun 10 2020, 10:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrea L. Ciobanu
Ciobanu Law, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Lauren E. Harpold
Lainie A. Hurwitz
Ruppert & Schaefer, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

L.B.,

*Appellant-Respondent,*

v.

M.B.,

*Appellee-Petitioner.*

June 10, 2020

Court of Appeals Case No.
19A-DC-2594

Appeal from the
Hamilton Superior Court

The Honorable
Jonathan M. Brown, Judge

Trial Court Cause No.
29D02-1706-DC-5218

**Kirsch, Judge.**

[1]     L.B. ("Mother") appeals the trial court's order finding her in indirect contempt for violating the trial court's previous order, contained in the dissolution decree, that required the children of the marriage to be vaccinated with the schedules

set forth by the American Academy of Pediatrics or as otherwise suggested by the children's doctors. Mother raises several issues, which we restate as:

I. Whether the trial court erred in proceeding with the contempt action while a prior appeal regarding the trial court's previous order granting M.B. ("Father") sole legal custody for medical decisions regarding their children and ordering that the children be vaccinated was pending with this court;

II. Whether the trial court abused its discretion when it found Mother in indirect contempt for violating the trial court's previous order by objecting to having one of the children vaccinated; and

III. Whether the trial court abused its discretion when it awarded Father attorney fees in the amount of $3,000 for Mother's failure to comply with the trial court's order.

[2] We affirm.

## Facts and Procedural History

[3] Mother and Father were married in August 2002, and their marriage was dissolved by decree in November 2018. *Appellant's App. Vol. 2* at 33. Three children were born in the marriage. This appeal concerns only A.B., who was thirteen at the time of the proceedings at issue. *Id.* at 34, 134-37. By the agreement of the parties and an order of the court, Father and A.B. began participating in reunification therapy in November 2018. *Id.* at 21-22; *Tr. Vol. 2* at 71. All issues in the underlying dissolution proceedings were resolved by agreement of the parties, except for the issue of legal custody pertaining to

medical decisions concerning the children. *Appellant's App. Vo1. 2* at 32. Hearings regarding that issue involved substantial evidence from the parties and various medical professionals and took place over the course of five days. *Id*. After hearing the evidence and taking the matter under advisement, the trial court issued an order on April 17, 2019, which, in relevant part, awarded Father sole legal custody as to medical decisions for the children and ordered the children to be vaccinated according to Father's wishes and in accordance with the schedules set forth by the American Academy of Pediatrics or as otherwise suggested by the children's doctors ("the April 2019 Order"). *Id*. at 100. Mother appealed that order, and the trial court's decision was affirmed by this court in an unpublished memorandum decision. *See L.B. v. M.B.*, No. 19A-DC-993, 2019 WL 6335334 (Ind. Ct. App. Nov. 27, 2019).

[4] On July 22, 2019, while the prior appeal was pending, Father filed his "Verified Petition for Rule to Show Cause and Request for Attorney's Fees" with the trial court. *Appellant's App. Vol. 2* at 121-25. In this petition, Father asserted, in relevant part, that: A.B.'s middle school required her to be current with her vaccinations before school began or she would not be permitted to attend; that reunification therapy between Father and A.B. was ongoing with Dr. Kevin Byrd ("Dr. Byrd"); that Dr. Byrd recommended that Father not enter any medical appointment room with A.B. and not force any interactions with A.B.; that A.B. had an appointment with her pediatrician, Dr. Kristen Gollnick ("Dr. Gollnick"), on June 28, 2019, at which A.B. was to get her vaccinations; that when Dr. Gollnick brought up the topic of vaccinations, A.B. presented

Dr. Gollnick with "anti-vaccination" documentation and refused vaccinations while Mother was present; and that Mother failed to assist Dr. Gollnick to ensure A.B. was vaccinated consistent with Father's wishes as medical legal custodian. *Id.* Father requested that Mother be found in contempt and be ordered to pay his attorney fees. *Id.* at 125.

On July 25, 2019, Mother filed her "Verified Response to Verified Motion for Rule to Show Cause and Request for Attorney Fees, Verified Cross Petition for Rule to Show Cause and Request for Attorney Fees, and Motion to Compel." *Id.* at 127-33. In her pleading, Mother denied the allegations made in Father's petition and asserted: (1) that she could not be held in contempt because the April 2019 Order was not "clear and certain"; (2) that Father should be held in contempt because the April 2019 Order "is unambiguous in that the children are to be vaccinated and that Father is the Medical Legal Custodian," and by failing to ensure that the children are vaccinated, Father was in contempt of the April 2019 Order; and (3) that Father should be compelled to "accomplish [the] task of completing vaccinations." *Id.* Mother also sought an award of attorney fees. *Id.*

On July 31, 2019, a hearing was held on both parties' pleadings. *Id.* at 16. At the hearing, Dr. Gollnick testified as follows as to what transpired at the appointment on June 28, 2019:

> [W]hen I asked what we were going to be doing with shots, both [A.B.] and [Mother] said that they did not consent. And then they started discussing, again, the safety about shots and their

objections to the shots and why they didn't want to get the shots. And [A.B.] brought out some information that she had researched that she wanted me to review. At which point I said it really doesn't matter. We need to get shots done because we have a court order to get shots done and they are medically necessary, but they both continued to voice their objections to the shots.

*Tr. Vol. 2* at 7. Dr. Gollnick further stated that "[Mother] did verbalize that she didn't consent to the vaccines." *Id*. at 26. Dr. Gollnick also testified that Mother never advised A.B. that there was a court order and that A.B. needed to be vaccinated. *Id*. at 8. As a result, "[A.B.] did not get her shots" at the June 28, 2019 appointment. *Id*. Dr. Gollnick stated that the documentation A.B. brought to the appointment was "what I would have expected from a 12-year-old, but along the same -- same as what Mom has brought in." *Id*. at 9. Although Dr. Gollnick was willing to forcibly vaccinate A.B., it was her policy to have a parent present for vaccination, she did not think it was fair for A.B. to be alone, and Mother had previously been at every vaccination appointment for the other children. *Id*. at 11, 15. However, Mother and A.B. continued to be argumentative, and A.B. was not vaccinated. *Id*. at 8.

[7] Prior to and during the time of the June 28, 2019 appointment, A.B. and Father were engaged in reunification therapy with Dr. Byrd, and Dr. Byrd had been working for many months to repair the "substantial distortions" A.B. had of Father. *Id*. at 28, 95. Progress had been "slow from the start" as A.B. was very stubborn, and Father and A.B. were not yet at the point of being in a room together at the time of the hearing, because A.B. refused to. *Id*. at 30, 38. Dr.

Byrd therefore testified that he believed it was reasonable for Mother to be in the exam room when A.B. received her vaccinations because "the idea of having [Father] be in the room while [A.B.] is being vaccinated against her will would have set the reunification process back months, if it didn't completely derail it," and because A.B. had equated being vaccinated with being raped. *Id.* at 38-39. Dr. Byrd further testified that requiring Father to be in the room when A.B. was vaccinated would "fuel her biggest fears," and that any plan requiring Father to transport A.B. to her pediatrician and accompany her into the examination room would be a "train wreck." *Id.* at 93. Dr. Byrd stated that after the months of reunification therapy, he "would have thought it would be quite obvious to [Mother] that that would be a very bad idea, and it would reset the reunification therapy back." *Id.* at 40. The trial court then questioned Dr. Byrd as follows:

> And so, if I have the other parent who is not wanting to follow the Court's order and is still objecting to the physician about vaccinations and still presenting information to the physician, either directly or using her 13 year old daughter or 12 year old daughter to dissemination [sic] this communication to the physician, that Mother is indirectly thwarting this reunification process by creating a situation by which, psychologically, [A.B.] believes that Father is indirectly raping her by requiring her to get a vaccination. Have I adequately summed up what's going on here, sir?

*Id.* at 83. Dr. Byrd responded, "That was perfect, yes." *Id.*

[8] Father testified that he had scheduled the June 28, 2019 vaccination appointment for all the children and that he was in the waiting room during the appointment. *Id*. at 102, 105. While Mother took A.B. back to the examination room, Father stayed in the waiting room with the other two children. *Id*. at 103, 105. Father explained that he did not go back to the examination room with A.B. because of their strained relationship and elaborated that he had "not talked to [his] daughter for almost two years" because "her image and view of [Father] is so distorted that [he] can't have any interaction with her whatsoever." *Id*. at 103. Father stated that it was not an option for Father to "take [A.B.] over there [to get vaccinated] when she won't even acknowledge me, get in my car, look at me, talk to me." *Id*.

[9] At the time of the July 31 hearing, A.B. had still not received her vaccinations, her school was set to begin in less than two weeks, and she could not attend school without receiving certain vaccinations. *Id*. at 107. Father requested that Mother transport A.B. to the next scheduled appointment to get her vaccinations and that she be present in the room with A.B. while she received her vaccinations. *Id*. at 115. Father testified that he had incurred $2,390 in attorney fees bringing his contempt action and submitted an affidavit from his attorney documenting the fees. *Id*. at 117.

[10] At the hearing, Mother testified that she was in the room with A.B. and Dr. Gollnick on June 28, 2019 for the vaccination appointment. *Id*. at 153. Mother stated that, during that appointment, Dr. Gollnick told A.B. there was a court order and that Mother said nothing to "back Dr. Gollnick up" regarding the

court order because she was "not going to forcefully do anything to my child" and did not "want to be a part of forcing any of my children to be vaccinated." *Id.* at 155, 158. Mother acknowledged that A.B. was unwilling to be in the same room with Father but stated she still thought that Father should be the one in the room with A.B. when she received vaccinations because Mother did not "want to be a part of it." *Id.* at 150-51. Mother admitted that A.B. had drawn an analogy between rape and vaccination and that she had not corrected A.B. because "[A.B.] genuinely feels that being forcefully held down and injected with something against her will, to her meant what she looked in the dictionary about." *Id.* at 170, 172. The trial court asked Mother if she would correct A.B. in the future, to which Mother eventually admitted that she did not feel that she had to say anything because she could "see where [A.B.] was coming from" in the analogy. *Id.* at 172, 175.

[11]     At the conclusion of the hearing, the trial court advised the parties that A.B. must be vaccinated as was required to begin school within ten days and that it would take the parties' pending motions under advisement. *Id.* at 190-91. On August 14, 2019, Mother filed a notice indicating that A.B. had been vaccinated. *Appellant's App. Vol. 2* at 17. On September 6, 2019, the trial court issued an order, finding that, although Mother had testified that A.B. was making the decision to object to vaccinations, the trial court believed that those objections were "orchestrated by [Mother], and this Court attributes those objections to [Mother] (which is in contravention of this Court's order)" and that "A.B. is a minor child, is not charged by this Court with decision-making

as to vaccinations, and [Mother] was in the examination room." *Id*. at 135-36.

The order also found that Father "has medical legal custody, which means he

gets to make medical decisions as to vaccinations. This does not mean he must

be in the room enforcing a vaccination provision ordered by this Court when

[Mother] is fully aware of the same order." *Id*. at 135. The trial court's order

found Mother to be in indirect contempt and concluded:

> 16.  As ordered previously, [Father] shall make arrangements for
> A.B. to receive the vaccinations, as he has done previously. If
> [Mother] is unable to transport A.B. to the appointment, [Father]
> shall make arrangements for transportation of A.B. to the
> appointment, or take A.B. to the appointment himself;
>
> . . . .
>
> 18.  Though [Mother] did cooperate with vaccinations for A.B.
> after the hearing on July 31, 2019, [Father] still incurred attorney
> fees and had to file his motion in order to insure [sic] compliance
> with this Court's order;
>
> 19.  The Court awards [Father] reasonable attorney fees in the
> amount of $3000[] for [Mother's] failure to comply with this
> Court's order;
>
> 20.  With respect to [Mother's] Verified Cross Petition for Rule to
> Show Cause and Request for Attorney Fees and Motion to
> Compel, the Court denies same.

*Id*. at 136-37. Mother now appeals.

# Discussion and Decision

## I.      Effect of Pending Appeal

[12]    Initially, Mother argues that the trial court erred in issuing an order finding her to be in indirect contempt because the trial court did not have jurisdiction over the matter of whether she willfully violated the April 2019 Order due to the fact that, at the time of the contempt proceedings, an appeal was pending regarding the April 2019 Order's grant of sole legal custody as to medical decisions to Father.  Mother asserts that the trial court had no further jurisdiction to act upon the April 2019 Order once this court acquired jurisdiction over her appeal. Mother further contends that Father's petition for rule to show cause was a "disguised effort to modify or create a new order that Mother be forced to accomplish the vaccinations" and that no modifications could be done while the appeal was pending.  *Appellant's Br*. at 17.

[13]    This court acquires jurisdiction over an appealed case on the date the trial court clerk issues its Notice of Completion of Clerk's Record.  Ind. Appellate Rule 8. Generally, once an appeal is perfected, the trial court loses jurisdiction over the case.  *In re N.H.,* 866 N.E.2d 314, 317 n.3 (Ind. Ct. App. 2007).  "This rule facilitates the orderly presentation and disposition of appeals and prevents the confusing and awkward situation of having the trial and appellate courts simultaneously reviewing the correctness of the judgment."  *Southwood v. Carlson,* 704 N.E.2d 163, 165 (Ind. Ct. App. 1999).  However, "we have held that the trial court can still rule on issues that could not have been raised on appeal."  *In re N.H.,* 866 N.E.2d at 317 n.3.  There are situations in which a trial

court may retain jurisdiction and act notwithstanding a pending appeal, including to perform ministerial tasks such as reassessing costs, correcting the record, or enforcing a judgment. *In re Paternity of V.A.*, 10 N.E.3d 65, 68 n.4 (Ind. Ct. App. 2014) (citing *City of New Haven v. Allen Cty. Bd. of Zoning Appeals,* 694 N.E.2d 306, 310 (Ind. Ct. App. 1998), *trans. denied*). Further, in family law cases, there are often issues unrelated to a pending appeal that the trial court may still decide. *See, e.g., Meade v. Levett,* 671 N.E.2d 1172, 1180 (Ind. Ct. App. 1996) (trial court had authority to hold a contempt hearing and punish the mother for failing to return child to the father even though issue of modification of custody was pending on appeal).

[14] Here, while Mother was appealing the trial court's April 2019 Order and the grant to Father of sole legal custody as to medical decisions, she disobeyed the order by objecting to A.B.'s vaccinations at the June 28, 2019 appointment. "Even an erroneous order must still be obeyed." *D.G. v. W.M.*, 118 N.E.3d 26, 31 (Ind. Ct. App. 2019), *trans. denied*. "A party's remedy for an erroneous order is appeal, and disobedience of the order is contempt." *Id.* Therefore, although Mother may have believed the April 2019 Order to be erroneous, she was required to obey it. When Mother disobeyed the trial court's order, a new set of facts was created that did not exist at the time Mother initiated her first appeal, which created a new cause of action for Father to pursue, and the trial court had authority to proceed on the contempt petitions filed by the parties and to enforce its judgment. *See City of New Haven*, 694 N.E.2d at 310; *Meade*, 671 N.E.2d at 1180. We conclude that the trial court did not err when it issued its

order finding Mother in indirect contempt while Mother's first appeal was pending.

## II. Finding of Contempt

[15] Whether a person is in contempt of a court order is a matter left to the trial court's discretion. *Akiwumi v. Akiwumi*, 23 N.E.3d 734, 741 (Ind. Ct. App. 2014). We will reverse the trial court's finding of contempt only where an abuse of discretion has been shown, which occurs only when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id*. When we review a contempt order, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id*. "'Willful disobedience of any lawfully entered court order of which the offender had notice is indirect contempt.'" *In re Paternity of M.F.*, 956 N.E.2d 1157, 1163 (Ind. Ct. App. 2011) (quoting *Henderson v. Henderson*, 919 N.E.2d 1207, 1210 (Ind. Ct. App. 2010)). Mother bore the burden of showing that her violation was not willful. *Akiwumi*, 23 N.E.3d at 741 (citing *Williamson v. Creamer*, 722 N.E.2d 863, 865 (Ind. Ct. App. 2000)).

[16] Mother argues that the trial court abused its discretion when it found her in indirect contempt of the April 2019 Order because the order is silent as to who is to carry out the vaccinations, and although the April 2019 Order ordered that the children shall be vaccinated in accordance with the schedules set forth by the American Academy of Pediatrics or as otherwise suggested by the children's doctors, it does not state which parent is to effectuate the vaccinations. Mother

also contends that she should not have to participate in the children's medical care and that Father should have been forced to carry out A.B.'s vaccinations because he has sole legal custody as to medical decisions, and "it is Father's responsibility to ensure that the children are transported to medical appointments and that the appointments are completed." *Appellant's Br*. at 14. She, therefore, asserts that the April 2019 order was not clear and certain, and she could not be found to be in contempt for violating an order that was ambiguous and indefinite.

[17] The willful disobedience of any lawfully entered court order of which the offender had notice constitutes indirect contempt. *Akiwumi*, 23 N.E.3d at 737. The order must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is violated. *Bandini v. Bandini,* 935 N.E.2d 253, 264–265 (Ind. Ct. App. 2010). A party may not be held in contempt for failing to comply with an ambiguous or indefinite order. *Id*. Uncontradicted evidence that a party is aware of a court order and willfully disobeys it is sufficient to support a finding of contempt. *Bessolo v. Rosario,* 966 N.E.2d 725, 730 (Ind. Ct. App. 2012), *trans. denied*. In cases of indirect contempt, the person charged with indirect contempt is entitled to be served with a rule to show cause. *Akiwumi*, 23 N.E.3d at 738. Pursuant to Indiana Code section 34-47-3-5, the rule to show cause must, among other requirements, clearly and distinctly set forth the facts that are alleged to constitute the contempt.

[18] In its April 2019 Order, the trial court awarded Father sole legal custody for medical decisions regarding the parties' children and ordered that the children shall be vaccinated in accordance with the schedules set forth by the American Academy of Pediatrics or as otherwise suggested by the children's doctors. *Appellant's App. Vol. 2* at 100. Mother was aware of the trial court's April 2019 Order and Father's decision as legal custodian for medical decisions that the children would be vaccinated. Mother was also aware that A.B. had to be timely vaccinated to attend her school. Father made a vaccination appointment for A.B. on June 28, 2019 to which Mother brought A.B. Mother knew that Father had not had any real contact, including parenting time, with A.B. for nearly two years, and that A.B. would not willingly be in any space with Father, including a car or an examination room for vaccinations. Mother also knew that Dr. Byrd had expressly recommended that Father and A.B. not be in the same room, particularly for vaccinations, and Mother testified that she agreed that such a situation would not be beneficial. *Tr. Vol. 2* at 152. Dr. Gollnick testified that it was her policy to have a parent in the room for all vaccinations and that Mother had attended all prior vaccination appointments for all three children. Therefore, Mother knew that A.B. was required to be vaccinated and that it was not feasible for Father to physically ensure this occurred, so Mother understood she must assist in accomplishing this and refused to do so. *See id*. at 155 (Mother responding "because I am not going to forcefully do anything to my child," when asked why she did not support Dr. Gollnick when the doctor reminded A.B. she had to be vaccinated on June 28, 2019).

[19]     The evidence presented showed that Mother knew that, according to the April 2019 Order, the children, including A.B., were required to be vaccinated, and at the June 28, 2019 appointment, Mother refused to accomplish this mandate. Father made the vaccination appointment for June 28, 2019, and Mother voluntarily transported A.B. to the appointment and went into the examination room with A.B. When Dr. Gollnick sought to vaccinate A.B. during the appointment, both A.B. and Mother stated that they did not consent. *Id.* at 7. Mother and A.B. then started discussing the safety of vaccinations and their objections and why they did not want to get the vaccinations. *Id.* A.B. presented literature she wanted Dr. Gollnick to review that the doctor recognized as similar to information she had previously received from Mother. *Id.* at 8-9. Dr. Gollnick then reminded Mother and A.B. that the vaccinations needed to be done because there was a court order and they were medically necessary, and both Mother and A.B. continued to voice their objections to the vaccinations. *Id.* at 7, 153. Mother did not reprimand A.B. or reinforce what Dr. Gollnick said and, instead, voiced her objections. At that time, by refusing to give consent and continuing to object to A.B. receiving vaccinations, Mother willfully violated the trial court's April 2019 Order. We, therefore, conclude that the trial court did not abuse its discretion when it found Mother to be in indirect contempt.

[20]     Additionally, Mother contends that, even if she had violated the April 2019 Order and was found in indirect contempt, she should be purged of the contempt because, after the July 31, 2019 hearing, A.B. received her

vaccinations when "the parties agreed upon a third party to transport the children, which resulted in the children receiving their vaccinations." *Appellant's Br*. at 20. "The purpose of civil contempt is to coerce action by the contemnor for the benefit of the aggrieved party; civil contempt is not meant to punish the contemnor." *Reynolds v. Reynolds*, 64 N.E.3d 829, 835 (Ind. 2016). Mother is correct that Indiana Code section 34-47-3-5 states, "The court shall, on proper showing, extend the time provided under subsection (b)(3) to give the defendant a reasonable and just opportunity to be purged of the contempt." Ind. Code § 34-47-3-5(c). However, this "'purge' portion of the statute has typically only applied to cases where the trial court has ordered jail time to coerce action by the contemnor." *Reynolds*, 64 N.E.3d at 835 (citations omitted). Our Supreme Court explained that this is likely because jail time is generally punitive in nature and civil contempt orders avoid punishing the contemnor by allowing the party to be purged of contempt. *Id.* Here, as in *Reynolds*, the trial court did not order Mother to serve any jail time. Because Mother was not ordered to serve any jail time, she was not entitled to an opportunity to purge herself, and the fact that the children later received their vaccinations is irrelevant to the issue of whether she was properly found to be in indirect contempt for her actions at the June 28, 2019 appointment, which occurred before the hearing and necessitated Father's petition for rule to show cause and the later hearing on the petition.

[21] Mother further claims that her due process rights were violated because the trial court's order finding her in indirect contempt was actually a modification of the

April 2019 Order. She asserts that the trial court's order was a modification of the April 2019 Order because it stated the following: (1) "[Father] has medical legal custody, which means he gets to make medical decisions as to vaccinations. This does not mean he must be in the room enforcing a vaccinations provision [in the April 2019 Order] when [Mother] is fully aware of the same order"; and (2) "[Father] shall make arrangements for A.B. to receive the vaccinations . . . [i]f [Mother] is unable to transport A.B. to the appointment, [Father] shall make arrangements for transportation of A.B. to the appointment or take A.B. to the appointment himself." *Appellant's App. Vol. 2* at 135-36. However, these statements were not modifications of the April 2019 Order and changed nothing that was true at the time of the June 28, 2019 doctor's appointment when Mother willfully violated the April 2019 Order. In its contempt order, the trial court did not impose any new or unforeseen burdens on Mother; it did not compel any new transportation obligation on Mother and only stated that if she is unable to transport A.B., either Father or a third party shall do so. Prior to the contempt order, Mother had always taken the children to their vaccination appointments, and she testified that she was willing to drive A.B. to vaccination appointments or to allow someone else to do so. *Tr. Vol. 2* at 145, 148. Thus, the trial court did not modify the April 2019 Order, and to the extent the April 2019 Order was clarified, the trial court did not violate Mother's due process rights.

# III. Attorney Fees

[22]     "'Once a party has been found in contempt of court, monetary damages may be awarded to compensate the other party for injuries incurred as a result of the contempt.'" *Bessolo*, 966 N.E.2d at 731 (quoting *Phillips v. Delks,* 880 N.E.2d 713, 720 (Ind. Ct. App. 2008)).  When determining whether to award attorney fees, a trial court "must consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors, which bear on the reasonableness of the award." *J.S. v. W.K.*, 62 N.E.3d 1, 9 (Ind. Ct. App. 2016).  A trial court is not required to give reasons for its determination or explicitly weigh the factors set forth above.  *Id*.  In determining an amount of damages, the trial court may take into account the inconvenience and frustration suffered by the aggrieved party.  *Bessolo*, 966 N.E.2d at 731.  The determination of damages in a contempt proceeding is within the trial court's discretion, and we will reverse an award of damages only if there is no evidence to support the award.  *Id.*

[23]     At the end of her brief, Mother asserts that "the order on attorney's fees should be reversed for the reasons stated herein, because Mother should not be in contempt, as well as the disparity of the income of the parties." *Appellant's Br*. at 21.  However, Mother cites to no authority or portion of the record to support her argument.  Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record.  *Smith v. State*, 822 N.E.2d 193, 202-03

(Ind. Ct. App. 2005), *trans. denied*. Accordingly, Mother's argument as to the award of attorney fees is waived.

[24] Waiver notwithstanding, the trial court did not abuse its discretion in awarding attorney fees to Father or in the amount of the award. Mother's actions prevented A.B. from being vaccinated pursuant to Father's determination as A.B.'s sole legal custodian for medical decisions and pursuant to the trial court's April 2019 Order, which forced Father to pursue a contempt action. At the time of the July 31, 2019 hearing, A.B. had still not received her vaccinations and school was to begin in less than two weeks, which she could not attend without receiving the vaccinations. At the hearing, Father's counsel submitted an affidavit of attorney fees related to his contempt action against Mother and was allowed by the trial court to update the affidavit to include fees associated with the hearing. Mother did not object at that time to the fees and made no argument that an award of fees would be inappropriate due to income disparity. When the trial court found that Mother was in indirect contempt, it was within its discretion to order Mother to pay attorney fees as a sanction for her contempt. *Bessolo*, 966 N.E.2d at 731. The trial court was not required to expressly state the reasons for its determination or explicitly weigh the financial factors that bear on the reasonableness of the award. *J.S.*, 62 N.E.3d at 9. The trial court did not abuse its discretion in its award of attorney fees to Father.

[25] Affirmed.

Najam, J., and Brown, J., concur.