

**FILED**
Feb 19 2016, 5:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS

Christopher M. Gilley
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Adoption of A.A. and L.A. (Minor Children) | February 19, 2016 |
| | Court of Appeals Case No. 48A02-1505-AD-328 |
| J.B. and S.B., *Appellants,* | Appeal from the Madison Circuit Court |
| v. | The Honorable Steven Nation, Special Judge |
| R.C. and N.C., *Appellees.* | Trial Court Cause No. 48C03-1202-AD-11 |

**Bailey, Judge.**

# Case Summary

[1]     J.B. and S.B. ("Parents" or "Adoptive Parents") petitioned for guardianship and later adopted A.A. and L.A. ("Children"). In 2012, the trial court granted

R.C. and N.C. ("Grandparents" or "Maternal Grandparents") grandparent visitation rights and ordered a specific visitation schedule. Parents, however, denied Grandparents the court-ordered visitation, prompting Grandparents to file numerous contempt motions to enforce the order. Parents in turn filed a petition to terminate grandparent visitation rights. Following consolidated hearings on the motions and petition, the trial court found Parents in contempt of court, ordered Parents to pay Grandparents' attorney fees of over $17,000 (plus $2,000 in previously-awarded fees) as a sanction for contempt, and denied Parents' petition to terminate grandparent visitation rights. We affirm.

# Issues

Parents present three issues for our review, which we reorder and restate as the following:

>   I.   Whether the trial court abused its discretion in finding Parents in contempt for refusing to comply with the court's orders on grandparent visitation;

>   II.  Whether the trial court abused its discretion in ordering Parents to pay $17,282.50 of Grandparents' attorney fees (plus $2,000 in previously-awarded attorney fees) as a sanction for contempt; and

III.  Whether the trial court abused its discretion in denying Parents' petition to terminate grandparent visitation rights.[1]

# Facts and Procedural History

As the trial court observed, the facts and history of this case are "just extremely sad." (Tr. 628.)  In 2008, M.A. brutally murdered his wife and Children's mother, C.A., in the presence of Children.[2]  J.B. and S.B.[3] immediately took custody of Children and later petitioned for guardianship.  Maternal Grandparents (C.A.'s adoptive parents) consented to the guardianship.[4]  Over time, however, the relationship between Parents and Grandparents grew strained.

On February 21, 2012, Parents filed an adoption petition, which was assigned to Judge Thomas Newman, Jr., of the Madison Circuit Court 3.  Grandparents

---

[1] Parents also raise a fourth issue: whether the trial court erred in ordering Parents to engage a clinical psychologist to evaluate the parties and determine the best method to reinstate grandparent visitation. Parents argue that the order was impermissible under this Court's decision in *In re Guardianship of C.R. & A.R.*, 22 N.E.3d 657, 661 (Ind. Ct. App. 2014) (holding that under the plain language of Indiana Code section 31-17-2-12, "the trial court does not have the authority to order [a child custody] evaluation, in a visitation proceeding, absent a request to do so from a parent or custodian"). However, Parents and Children have already submitted to the psychological evaluation; indeed, the appendix contains a copy of the psychologist's report. This Court therefore cannot provide Parents the relief they seek, and the issue is now moot. *See In re Tina T.*, 579 N.E.2d 48, 52 (Ind. 1991) ("An appeal or an issue becomes moot when [. . . ] the court on appeal is unable to render effective relief upon an issue.").

[2] At the time, A.A. was almost five years old and L.A. was an infant. M.A. pleaded guilty to murder and is serving a sixty-year sentence.

[3] J.B. is M.A.'s half-brother. J.B. and S.B., then partners, are now married.

[4] Children's paternal grandmother also consented to the guardianship, but filed a petition for grandparent visitation rights at that time. Our supreme court's opinion in *In re Guardianship of A.J.A. & L.M.A.*, 991 N.E.2d 110 (Ind. 2013), concerns paternal grandmother's visitation rights.

first filed an untimely objection to the adoption petition, then filed a separate cause of action seeking to establish grandparent visitation.[5] Following a consolidated hearing on the adoption petition and grandparent visitation rights, the court entered an order on April 25, 2012 granting both Parents' petition for adoption and Grandparents' petition for visitation rights ("the April 2012 order"). As to grandparent visitation, the court noted that Parents "have consented that visitation is appropriate by the grandparents, but that they would prefer that visitation not be specific, that visitation be left to the adoptive parent[s'] discretion." (App. 150.) Nevertheless, the court ordered a specific visitation schedule, including one weekend per month, two weeks in the summer, and certain special occasions.

[5] On May 23, 2012, Parents filed a motion to correct error, challenging the validity of the order on several grounds. Although Parents had permitted Grandparents to have visitation in May 2012, Parents denied Grandparents visitation in June and Grandparents' requests for summer visitation. In response, Grandparents filed an affidavit for citation and request for sanctions and fees on June 22, 2012. Judge Newman transferred the matter to Senior Judge Carl VanDorn.

[6] A consolidated hearing on the motions was held on July 16, 2012, and on August 13, 2012, the court issued two orders ("the August 2012 orders"). On

---

[5] For a more detailed recitation of the early procedural history of this case, see *In re Adoption of A.A. & L.A.*, No. 48A04-1304-AD-176, slip op. 2-4 (Ind. Ct. App. Feb. 7, 2014), *trans. denied*.

Parents' motion to correct error, the court found that Judge Newman's order granting visitation rights did not contain specific findings and conclusions as required by law. The court therefore remanded the case to Judge Newman to make those findings and conclusions, but specifically noted that the remand did not relieve Parents of their obligation to comply with the visitation order. In all other respects, the court denied Parents' motion to correct error. As to Grandparents' affidavit for citation and request for sanctions and fees, the court found that Parents intentionally violated the grandparent visitation order, found Parents in contempt, and as a sanction ordered Parents to pay $2,000 of Grandparents' attorney fees incurred to enforce the order. (App. 9.) The court further ordered specific "make-up" visitation for the missed monthly and summer visitation.

[7] Despite the court's orders, Parents continued to deny Grandparents visitation. Grandparents soon filed a second affidavit for citation and request for incarceration, and a motion for attorney fees. Among various other motions, Parents moved for a change of judge. After several judicial officers declined appointment, the Honorable Steven R. Nation of the Hamilton Superior Court 1 accepted appointment as a special judge on February 5, 2013. Meanwhile, on March 11, 2013, Judge Newman entered the required findings and conclusions to support the initial order granting grandparent visitation rights and implementing a structured visitation schedule. On appeal, this Court affirmed in all respects the trial court's order on grandparent visitation. *See In re Adoption*

*of A.A. & L.A.*, No. 48A04-1304-AD-176, slip op. at 9 (Ind. Ct. App. Feb. 7, 2014), *trans. denied*.

[8]     Following certification of this Court's decision, Grandparents filed on June 3, 2014 another affidavit for citation, motion to enforce order, and request for appropriate sanctions. On July 17, 2014, Parents filed a verified petition to terminate grandparent visitation rights. On September 15, 2014, November 5, 2014, and January 13, 2015, Special Judge Nation heard evidence and argument on Grandparents' pending contempt citations and motions[6] and Parents' petition to terminate. On March 26, 2015, the court found Parents in contempt for refusing regular and make-up visitation after the April 2012 and August 2012 orders and for failing to pay the previously-ordered $2,000 sanction. The court then ordered Parents to pay an additional sanction of $17,282.50 in attorney fees (App. 37), reduced each sanction order to a judgment, and took under advisement Grandparents' request for additional sanctions or incarceration. The court denied Parents' request to terminate grandparent visitation rights.

[9]     Parents now appeal.

---

[6] Grandparents' pending motions included: July 3, 2014 Affidavit for Citation, Motion to Enforce Order, and Request for Appropriate Sanctions; May 8, 2013 Motion to Reduce Attorney Fee Order to Judgement; February 28, 2013 Motion for Proceedings Supplemental against [J.B.] and [S.B.] to Enforce Attorney Fee Order; August 15, 2012 Motion for Relief Against [J.B.] and [S.B.] Per IC 34-52-1-1; September 17, 2012 Second Affidavit for Citation and Request for Incarceration; October 1, 2012 Amended Affidavit for Citation and Request for Incarceration.

# Discussion and Decision

[10] We first note that Grandparents have not filed an appellees' brief.

> Where the appellee fails to file a brief on appeal, we may, in our discretion, reverse the trial court's decision if the appellant makes a prima facie showing of reversible error. *McGill v. McGill*, 801 N.E.2d 1249, 1251 (Ind. Ct. App. 2004). In this context, prima facie error is defined as "at first sight, on first appearance, or on the face of it." *Orlich v. Orlich*, 859 N.E.2d 671, 673 (Ind. Ct. App. 2006). This rule was established for our protection so that we can be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. *McGill*, 801 N.E.2d at 1251.

*In re Visitation of C.L.H.*, 908 N.E.2d 320, 326-27 (Ind. Ct. App. 2009). With this standard in mind, we turn to Parents' contentions.

# Contempt Order

[11] Parents argue that the trial court abused its discretion when it found Parents in contempt for failing to comply with the court's April 2012 and August 2012 orders on grandparent visitation.

[12] Whether a party is in contempt of court is a matter within the trial court's discretion. *In re Paternity of M.F.*, 956 N.E.2d 1157, 1162 (Ind. Ct. App. 2011). A court's finding of contempt will be reversed only for an abuse of that discretion. *Id.* "A court has abused its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law." *Id.*

[13]   There are two types of contempt: direct and indirect. *Akiwumi v. Akiwumi*, 23 N.E.3d 734, 737 (Ind. Ct. App. 2014). Willful disobedience of any lawfully-entered court order of which the offender had notice is indirect contempt. *Francies v. Francies*, 759 N.E.2d 1106, 1118 (Ind. Ct. App. 2001), *trans. denied*.

> In order to be held in contempt for failure to follow the court's order, a party must have willfully disobeyed the court order. *Ind. High Sch. Athletic Ass'n v. Martin*, 765 N.E.2d 1238, 1241 (Ind. 2002). The order must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is violated. *Id.* A party may not be held in contempt for failing to comply with an ambiguous or indefinite order.

*City of Gary v. Major*, 822 N.E.2d 165, 170 (Ind. 2005).

[14]   Grandparents filed multiple affidavits for citation, the most recent of which alleged that Parents stopped "all visitation and communication" between Grandparents and Children after May 2012 despite the court's prior orders. (App. 237.) At the hearing, Parents admitted that they denied Grandparents visitation and that Grandparents have had no contact with Children since May 2012. Grandparents also introduced into evidence copies of emails sent between April 2012 and May 2013, in which Grandparents expressed their intention to exercise visitation rights in accordance with the court orders and Parents either denied visitation or simply did not reply. The trial court found that "Parents have presented no valid defense for their actions" (App. 37) and found them in contempt of the visitation orders.

[15] On appeal, Parents first point to several recent Indiana appellate court opinions concerning grandparent visitation rights, but present no cogent reasoning that explains the effect of these cases on the court's finding of contempt. *See* Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning"). Parents seem to suggest that because they believed the court's April 2012 order granting grandparent visitation rights was void, the trial court abused its discretion in finding them in contempt for failing to follow it.

[16] A person cannot be held in contempt for failure to obey an order the court lacked jurisdiction to give; such an order is void and unenforceable. *City of Gary*, 822 N.E.2d at 169. However, a defendant may be found in contempt for violating an order that is erroneous or otherwise invalid. *Id.* "'The only remedy from an erroneous order is appeal and disobedience thereto is contempt.'" *Id.* at 170 (quoting *Carson v. Ross*, 509 N.E.2d 239, 243 (Ind. Ct. App. 1987), *trans. denied*).

[17] Parents had an opportunity to – and did – challenge the validity of the court's visitation order, including the court's jurisdiction. Parents first filed a motion to correct error. That motion was denied, except that Judge VanDorn remanded the case to Judge Newman for more detailed findings and conclusions. To that end, the court explicitly ordered: "It must be noted that the trial court's failure to issue these findings does not release the ADOPTIVE PARENTS of their obligation to follow the visitation order." (App. 7.) After the findings and conclusions were entered, Parents appealed the order granting visitation rights.

This Court affirmed in all respects, *see A.A. & L.A.*, No. 48A04-1304-AD-176, slip op. at 9, and the Indiana Supreme Court denied Parents' petition to transfer, 9 N.E.3d 170 (Ind. May 15, 2014) (table). As this Court has already reviewed the jurisdictional issues surrounding the trial court's order granting grandparent visitation rights, we decline Parents' invitation to revisit those issues. Parents' belief that the orders were void is not a valid defense to their actions.

[18] Parents also argue that the court's order on contempt is an abuse of discretion because Parents were acting in Children's best interest. According to Parents, "[i]t is not *willful disobedience* to do what is in the best interests of the children when the order would place the children in harm's way." (Appellant's Br. 35.)

[19] At the hearing, Parents testified at length about specific incidents of Grandparents' conduct and why Parents believed contact with Grandparents would be harmful to Children or otherwise not in Children's best interests. However, because Grandparents and Children have not had contact since May 2012, Parents' testimony and other supporting evidence focused on events and interactions that occurred prior to that time. Our review of the record shows that the behavior about which Parents complain was well-documented prior to the April 2012 adoption/visitation hearing, at which time Parents agreed to facilitate grandparent visitation and the trial court found that grandparent

visitation was in Children's best interests.[7] As to Parents' concerns about Grandparents' behavior after the April 2012 order, it is clear from the August 2012 orders that Parents also presented those concerns to the trial court. After hearing Parents' evidence and argument concerning the May 2012 visitation, Judge VanDorn found Parents in contempt for denying visitation, ordered Parents to comply with the April 2012 order, and further ordered make-up visitation.

[20] Now Parents seek to use the same evidence to argue that they were not willfully disobedient of the court's orders, but justifiably protecting Children. Although Parents argue that Grandparents' "traumatizing conduct" and "pattern of behavior" was recently "brought to light," thus "distinguish[ing] the matter now from the previous appeal" (Appellant's Br. 14), the record does not support this assertion. And to the extent Parents now argue that they did not have ample time or notice to adequately raise and argue their concerns at the April 2012 hearing, the time to bring that challenge was during the August 2012 motion to correct error or on appeal of the original order.

[21] By again raising the same evidence and arguments already presented to the trial court, Parents attempt to collaterally attack the court's prior finding that a relationship with Grandparents is in Children's best interests. Parents'

---

[7] As this Court previously described, Parents' position at the time of the visitation hearing "could be summed up as a reluctance to have structured visitation rights given to the Maternal Grandparents, more than a disagreement that visitation should occur at all." *A.A. & L.A.*, No. 48A04-1304-AD-176, slip op. at 8-9.

continuing disagreement with the trial court's finding in this respect is not a valid justification for disobeying the order. Parents appealed the order, and this Court affirmed the trial court. After the adverse appellate decision, J.B.'s belief – no matter how sincere – that "I don't believe that [the Court of Appeals] got the answers correct" (Tr. 293) does not relieve Parents of their obligation to follow a clear and unambiguous trial court order.

[22]     The trial court did not abuse its discretion in finding Parents in contempt for willfully disobeying a valid court order for grandparent visitation.

# Sanction

[23]     Parents next challenge the trial court's award of $17,282.50 in attorney fees as a sanction for their contempt.

[24]     After a party has been found in contempt of court, monetary damages may be awarded to compensate the other party for injuries incurred as a result of the contempt. *City of Gary*, 822 N.E.2d at 172. The determination of damages in a contempt proceeding is within the trial court's discretion. *Id.* We will reverse an award of damages only if there is no evidence to support the award. *Id.* In establishing the amount of damages, the court may take into account "the inconvenience and frustration suffered by the aggrieved party . . . ." *Id.* (quoting *Thomas v. Woollen*, 255 Ind. 612, 266 N.E.2d 20, 22 (1971)).

[25]     In support of their request for sanctions, Grandparents submitted a January 13, 2015 statement showing Grandparents had paid $19,252 in attorney fees since March 31, 2012, plus had an outstanding balance (including anticipated fees) of

$2,950.  (Exhibit F.)  R.C. stated at the hearing that the statement included the $2,000 in attorney fees previously awarded on August 13, 2012 as a sanction for contempt.  The trial court ordered Parents to pay the $2,000 of previously-ordered fees, "an additional attorney fees sanction in the amount of $17,282.50," and reduced each award to a judgment.  (App. 37.)

[26]   Parents contend that the evidence does not support an additional sanction of $17,282.50 because not all of the fees listed on the statement were incurred as a result of Parents' contumacious conduct.  At the hearing, Parents alleged that certain line items on the statement related to the guardianship proceedings, not to the grandparent visitation case.[8]  Grandparents' attorney made conciliatory comments – such as "I'll cross that one out" (Tr. 508) – as to five of the charges totaling $612.50.[9]  (Tr. 506, 508, 514, 516; Exhibit F.)  Based on this testimony and commentary, Parents argue that the statement was so inaccurate that "the Court should have disregarded the entire invoice."  (Appellant's Br. 40.)

[27]   We disagree that Parents' testimony rendered the invoice so inaccurate and unreliable that an attorney fees award based on the statement was an abuse of discretion.  Although Parents objected to some of the fees as unrelated to the visitation matter and Grandparents' attorney voiced her willingness to remove them, this does not preclude the possibility that the trial court determined that

---

[8] Specifically, Parents pointed to charges incurred on April 23, April 30, May 16, May 21, May 22, June 25, August 3, November 30, and December 6, 2012, and March 12 and May 28, 2013.

[9] These charges occurred on April 23, April 30, May 16, November 30, 2012 and May 28, 2013.

the majority of the fees billed were related to Parents' contumacious conduct. *See Witt v. Jay Petroleum, Inc.*, 964 N.E.2d 198, 204-05 (Ind. 2012) (holding that the trial court did not abuse its discretion when it imposed fees based on evidence presented during a preliminary injunction hearing, rather than apportioning fees to reflect only the parts of the hearing relevant to the contempt judgment). Furthermore, because $2,000 of those fees had already been awarded as a sanction for Parents' contempt and some of the fees were speculative, the trial court did not award the full invoiced amount.[10]

[28] The trial court did not abuse its discretion in ordering Parents to pay an additional $17,282.50 in attorney fees (plus $2,000 of previously-awarded fees) as a sanction for contempt.

## Order on Grandparent Visitation

[29] Parents also argue the court's order denying Parents' verified petition for termination of grandparent visitation rights was an abuse of discretion.

[30] Parents first contend that the order was deficient because the order does not explicitly discuss four factors a court must address when granting or denying grandparent visitation as an initial matter. "When a trial court enters a decree granting or denying grandparent visitation, it is required to set forth findings of

---

[10] Parents also argue that the trial court abused its discretion in ordering them to pay the $2,000 in previously-ordered attorney fees because Judge VanDorn vacated the previous contempt finding and sanctions order. In support, Parents cite passing comments made by the court during a December 17, 2012 hearing. However, Parents point to no order vacating the August 2012 award. Our review of the court's comments and the record as a whole show that the evidence and record do not support Parents' argument.

fact and conclusions of law." *In re Paternity of K.I.*, 903 N.E.2d 453, 462 (Ind. 2009) (citing *McCune v. Frey*, 783 N.E.2d 752, 757 (Ind. Ct. App. 2003)). Indiana courts have held that those findings and conclusions must specifically address four factors, commonly known as the *McCune* factors: (1) the presumption that a fit parent's decision about grandparent visitation is in the child's best interests; (2) the special weight that must be given to a fit parent's decision regarding non-parental visitation; (3) some weight given to whether a parent has denied or simply limited visitation; and (4) whether the grandparent has established that visitation is in the child's best interests. *In re Visitation of M.L.B.*, 983 N.E.2d 583, 586 (Ind. 2013) (citing *McCune*, 783 N.E.2d at 757-59, and reordering the *McCune* factors).[11]  As our supreme court has explained, the "first three required factors implement the constitutionally protected right of fit parents to make child rearing decisions, and reflect the significant burden of proof grandparents must carry to override those decisions." *Id.* at 587.

[31]  Because the trial court's order did not explicitly address the first three *McCune* factors, Parents contend that the order was insufficient.  However, Parents fail to acknowledge that the order being appealed at this stage is not an initial order granting grandparent visitation rights.  That order was entered in April 2012, supplemented with the required findings and conclusions in March 2013, and affirmed on appeal in February 2014.  *See A.A. & L.A.*, No. 48A04-1304-AD-

---

[11] In their brief, Parents state that the four factors were established by *Hicks v. Larson*, 884 N.E.2d 869 (Ind. Ct. App. 2008), *trans. denied*.  The *McCune* factors are the same as those enumerated in *Hicks*.  *See Hicks*, 884 N.E.2d at 873-74.

176. After this Court's prior decision was certified, Parents then petitioned the trial court seeking modification of existing visitation rights, specifically asking that those rights be terminated. The order now being appealed is the trial court's order denying Parents' petition to terminate.

[32] As to modification, the Act provides: "The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child." I.C. § 31-17-5-7. Parents argue that Grandparents "wholly failed to present any testimony, exhibits, or evidence to support that it is in the best interest of the children" and therefore "the order for visitation must fail." (Appellant's Br. 11.) In other words, they seek to shift the burden to Grandparents to show that grandparent visitation is still in Children's best interests.

[33] We have found no Indiana case that specifically speaks to the burden of proof on a petition to modify an existing order of grandparent visitation rights. However, our courts have addressed the burden of proof necessary to modify an existing order of *parenting* time rights following an initial custody determination. Using nearly identical language to the grandparent visitation statute, Indiana Code section 31-17-4-2 provides, in relevant part: "The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child." For the purposes of custody and parenting time rights, both parents are presumed equally entitled to custody in an initial custody determination. *In re Paternity of Snyder*, 26 N.E.3d 996, 998 (quoting *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1256 (Ind. Ct. App.

2010). However, after the initial determination, a petitioner seeking modification of a parenting time order bears the burden of showing that custody should be altered. *Id.*

[34] The similarity in statutory language suggests that we place the burden on modification of grandparent visitation rights with the same party as on modification of parenting time rights. Even though the petitioning grandparent carries a high burden on the initial petition for grandparent visitation rights, the petitioner seeking a subsequent change in a grandparent visitation order bears the burden of showing the order should be modified. As the moving party, Parents thus bore the burden of demonstrating that modification of the existing visitation order would serve Children's best interests.

[35] In making their argument for modification, Parents again relied on evidence and testimony about events that pre-dated the court's May 2012 and August 2012 orders. The trial court thus found that "Parents have failed to show a change of circumstances since the last Order that would make it no longer in the best interest of the minor children to have a relationship with their Grandparents." (App. 35.)

[36] By presenting no new evidence to support termination of visitation, Parents' motion to terminate amounted to nothing more than an attempt to re-litigate issues already brought before the court and affirmed on appeal. Now Parents argue that "[w]ith three (3) years of no visitation between [Grandparents] and the children, such a lapse in time between visits is in and of itself a substantial

change of circumstances." (Appellant's Br. 14.) However, Parents presented no evidence at the hearing that the lapse in time alone would be detrimental to Children's well-being. Further, Parents fail to acknowledge that the lack of communication between Grandparents and Children was a direct result of Parents' contumacious conduct.

[37] Where Parents did not present any evidence showing a change of circumstances to support modification, let alone termination, of the visitation order, the trial court did not abuse its discretion in denying Parents' petition to terminate grandparent visitation rights.

# Conclusion

[38] The trial court did not abuse its discretion in finding Parents in contempt and ordering Parents to pay $17,282.50 in attorney fees (plus $2,000 in previously-ordered attorney fees) as a sanction for contempt. The trial court's order denying Parents' petition to terminate grandparent visitation rights was not an abuse of discretion.

[39] Affirmed.

Vaidik, C.J. and Crone, J., concur.