# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 15 2019, 9:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Carl Paul Lamb
Matthew L. Fox
Lamb & Fox LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Ryan M. Spahr
Spahr Law Office, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Caitilin Ashley,

*Appellant-Petitioner,*

v.

Richard F. Ashley, Jr.,

*Appellee-Respondent.*

August 15, 2019

Court of Appeals Case No.
19A-DR-354

Appeal from the Marion Superior Court

The Honorable Patrick J. Dietrick, Judge

The Honorable Caryl F. Dill, Magistrate

Trial Court Cause No.
49D12-1510-DR-35333

**Bailey, Judge.**

# Case Summary

Caitilin Ashley ("Wife") appeals an order finding her in contempt of court and ordering that she pay attorney's fees on behalf of Richard Ashley ("Husband"). Additionally, she challenges the trial court's denial of her motion for contempt against Husband. We affirm in part and reverse in part.

# Issues

Wife presents the following consolidated and restated issues:[1]

   I.   Whether the trial court abused its discretion by finding her, as opposed to Husband, in contempt of court; and

   II.  Whether the sanction for contempt is an abuse of discretion.

# Facts and Procedural History

In 2016, after thirty years of marriage and the acquisition of several real properties, Wife and Husband divorced. Their mediated settlement, adopted by the dissolution court, provided that Husband would have possession of properties at 3650 Washington Boulevard and 3755 Washington Boulevard in Indianapolis ("the Properties"), pending their sale. Wife was to be afforded

---

[1] Because we reverse, we do not reach the issue of whether Wife was entitled to a continuance of the trial proceedings to obtain successive counsel.

access as reasonably necessary for the sale process. Each spouse was awarded other parcels of real estate as his or her individual property.

[4] The settlement agreement contained provisions that the trial court would later describe as "conflicting." Appealed Order at 3. The agreement provided that each of the properties should be listed for sale in its current condition and "neither party shall be obligated to make improvements or remediations except as mutually agreed in writing through the sale process." *Id.* Another paragraph of the settlement agreement stated: "Each party shall cooperate fully with all reasonably necessary sales efforts including but not limited to allowing access for reasonable walk-throughs, open houses, showings appraisals, inspections, cleanings, etc., and reasonably maintaining the 'show-ready' condition." *Id.*

[5] On April 21, 2017, the trial court approved an Agreed Modification to the Mediated Marital Settlement Agreement. Pursuant to that agreement, Husband was to receive as his sole property an additional parcel of real estate located at 3920 Washington Boulevard, and Wife was to be paid her equity in 3920 Washington Boulevard from the proceeds of the sale of 3755 Washington Boulevard.

[6] At the expiration of a one-year listing contract, neither of the Properties had been sold and thus Wife had not received her equity in 3920 Washington Boulevard. For a time, the former spouses amicably discussed re-listing the Properties. Wife, who had obtained a realtor's license, considered listing the Properties but learned that she could not list 3755 Washington Boulevard

because she was not licensed to sell commercial property. Cooperative efforts broke down when Husband and Wife could not agree on a successive realtor or listing price.

[7] More fundamentally, and eventually giving rise to the instant litigation, Husband and Wife did not agree on the extent of Husband's obligation to clean and present the Properties for showing. Wife requested, in writing, that Husband perform landscaping tasks, eliminate rust stains from sinks or re-glaze them, repair water damage, and remove construction debris, items stored in a garage, and numerous boxes of business records. She opined that these efforts would bring the Properties to a show-ready condition and, without the measures, the commercial property would be devalued by $100,000.00. Husband's position was that, under the decree adopting the mediated settlement, the Properties were being offered for sale in an as-is condition.

[8] On April 12, 2018, Wife filed her "Petition for Rule to Show Cause, Enforcement of Decree, and Request for Attorney's Fees." (App. Vol. II, pg. 59.) She alleged that Husband was in contempt of court for failing to keep the Properties in a "show-ready" condition, denying her reasonable access, refusing to agree upon a realtor, refusing to refinance the mortgage for 3920 Washington Boulevard, and delaying the tender of her vehicle title and proceeds from an IRA. *Id.* She asked that Husband be ordered to better maintain the Properties and pay her for the claimed reduction in value. She also requested that final proceeds of the sale be used to pay 2015 income taxes and a $4,400.00 medical bill. On August 31, 2018, Husband filed a petition for rule to show cause,

alleging Wife was in contempt of court because she had "continued to make unjustified and outlandish demands on Husband before she would agree to participate and cause the listing of the properties." *Id.* at 84.

[9] The trial court conducted a hearing on the respective contempt petitions on July 9 and October 5, 2018.[2] By the final hearing date, Husband had cleared out his personal and business property and vacated the Properties, moved into the residence at 3920 Washington Boulevard, and delivered to Wife the title to her vehicle and $2,000.00 from an IRA. He had paid $14,000.00 of the 2015 income taxes but had not paid any part of the medical bill. A sale of the 3755 Washington Boulevard property was pending. The property at 3650 Washington Boulevard was listed for sale at an agreed listing price of $395,000.00.

[10] Although the property distribution was substantially completed, each party desired that the other be held in contempt for wrongfully interpreting their settlement and causing delays. Wife had incurred approximately $25,000.00 for attorney's fees, and Husband had incurred approximately $28,000.00. Each desired a sanction order against the other for payment of fees.

[11] Realtors Larry Gregerson ("Gregerson") and Ken George ("George") testified regarding the condition of the Properties during the time they were listed

---

[2] Wife had filed, and later moved to dismiss, a petition for modification of child support. She had also twice petitioned for appointment of a receiver; the trial court summarily denied those petitions.

without selling. Gregerson described the Properties as having construction debris, water leaks, rusty sinks, and "pretty overgrown landscaping." (Tr. Vol. II, pg. 11.) The biggest concerns, according to George, were stored boxes and the need for exterior upkeep. Wife testified that, in her opinion, Husband had not kept the Properties in show-ready condition. She described being "horrified by so much clutter, boxes, and junk." *Id.* at 32. She also claimed that Husband had denied her access and she had not refused to agree upon a successive realtor. She acknowledged that Husband had provided her with a vehicle title and IRA funds but faulted his delay.

[12] In turn, Husband testified that he had followed the court order and had not been obligated to improve the Properties beyond their condition at the time of the initial listing (which predated the divorce). He claimed that he had allowed Wife reasonable access to the Properties and the lack of sale was traceable to her "adamant" refusal to lower the price. *Id.* at 190. Husband testified that he was compliant with court-ordered payments and transfers (but he acknowledged that neither spouse had paid a portion of the medical bill despite each receiving $25,000.00 from a prior real estate transaction). He further testified that he had not immediately refinanced the mortgage for 3920 Washington Boulevard because, upon investigation, he learned that only he was liable on the mortgage.[3]

---

[3] Nonetheless, Husband stated that he had recently applied to refinance the mortgage for his own budgetary purposes.

[13]   On January 4, 2019, the trial court issued an order finding Wife in contempt of court and ordering that she pay $15,000.00 of Husband's attorney's fees. The order specified that Wife was found in contempt of court "for her unreasonable refusal to agree on listing prices, act as listing agent, agree on a listing agent and reduce the listing prices of the properties as well as her refusal to acknowledge that the properties were to be listed and sold in 'their current condition.'" Appealed Order at 8.

[14]   With respect to Husband, the order stated:

> The Court finds [Husband] was not in contempt of court for refusing to allow [Wife] access to the properties or for failing to maintain the properties in "show ready" condition. The Court finds he was required to put forth additional efforts and expend funds in an effort to clean and unclutter the properties to placate [Wife] because of her unreasonable refusal to act as listing agent, agree on a listing agent and agree on listing prices to sell the properties "IN THEIR CURRENT CONDITION."

*Id.* Additionally, the trial court found that Husband's delay in providing the vehicle title and IRA funds was "inadvertent and not willful" and he was not required to refinance a mortgage solely in his name. *Id.* The order further provided that "outstanding debts, if any, as outlined in the Settlement, shall be paid from the proceeds of the sale of 3650 and 3755 Washington Boulevard." *Id.* at 8-9. Wife now appeals.

# Discussion and Decision

## Finding of Lack of Contempt – Husband

[15] When dissolving a marriage, parties are free to negotiate their own settlement agreements and may incorporate those into a dissolution decree. Ind. Code § 31-15-2-17. Such agreements are contractual in nature, and once incorporated into a trial court's final order, the agreements become binding on both parties. *Whittaker v. Whittaker*, 44 N.E.3d 716, 719 (Ind. Ct. App. 2015). All orders contained within a divorce decree may be enforced in contempt proceedings. I.C. § 31-15-7-10.

[16] Whether a party is in contempt of court is a matter within the trial court's discretion, and its finding will be reversed only for an abuse of that discretion. *In re Adoption of A.A.*, 51 N.E.3d 380, 385 (Ind. Ct. App. 2016). "A court has abused its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law." *In re Paternity of M.F.*, 956 N.E.2d 1157, 1162 (Ind. Ct. App. 2011).

[17] There are two types of contempt, that is, direct and indirect. *In re A.A.*, 51 N.E.3d at 385. Indirect contempt, at issue here, is defined as "willful disobedience of any lawfully-entered court order of which the offender had notice." *Id.* The order must "command the accused to do or refrain from doing something." *Piercey v. Piercey*, 727 N.E.2d 26, 32 (Ind. Ct. App. 2000). The contemptuous act must be done willfully and with the intent to show disrespect or defiance. *Witt v. Jay Petroleum, Inc.*, 964 N.E.2d 198, 202 (Ind. 2012). Also,

the order must have been so clear and certain that there could be no question concerning what the party must do, or refrain from doing, such that there could be no question as to whether the order is violated. *City of Gary v. Major*, 822 N.E.2d 165, 170 (Ind. 2005). A party may not be held in contempt of court for failure to comply with an order that is either ambiguous or indefinite. *Id.*

Wife argues that the trial court abused its discretion by refusing to find Husband in contempt of court when, by his own admission, he delayed beyond the parameters of the dissolution decree in refinancing a mortgage and tendering to Wife the title to her vehicle and $2,000.00 from an IRA. However, he testified to the following circumstances: he discovered Wife was not obligated on the mortgage; he paid off her vehicle and put aside the title, remembering it only during mediation; and it was a mere oversight when he withheld the $2,000.00 IRA proceeds while focusing on larger IRA accounts. "Crucial to the determination of contempt is the evaluation of a person's state of mind, that is, whether the alleged contemptuous conduct was done willfully." *Witt*, 964 N.E.2d at 202. Here, the trial court found that Husband's conduct was inadvertent and not willful. We will not reweigh the evidence to conclude otherwise. *Piercey*, 727 N.E.2d at 32.

## Finding of Contempt – Wife

Wife argues that Husband's motion for a rule to show cause did not sufficiently allege facts constituting contempt, thus denying her due process. She further

argues that the trial court then abused its discretion by finding her in contempt without identifying a court-ordered act that she willfully refused to perform.

[20] Indiana Code Section 34-47-3-5(b) requires in relevant part that a rule to show cause must:

> (1) clearly and distinctly set forth the facts that are alleged to constitute the contempt; [and]
>
> (2) specify the time and place of the facts with reasonable certainty, as to inform the defendant of the nature and circumstances of the charge against the defendant[.]

[21] However, a party may waive a due process violation claim by failing to raise an argument at the trial level. *McKibben v. Hughes*, 23 N.E.3d 819, 828 (Ind. Ct. App. 2014). Wife failed to argue to the trial court that she was denied due process because she lacked knowledge of the allegations against her. She thus waived this argument for appeal. We turn to her contention that the trial court abused its discretion when deciding the merits of the contempt allegation against her.

[22] The trial court determined that the settlement agreement, adopted by the dissolution court, contained conflicting provisions regarding how the parties were to present the Properties for sale. It did not define show-ready, nor did it specify the steps to be taken if the initial real estate listing expired without a sale. Yet Wife was found in contempt of court for "refusal to agree on listing prices, act as listing agent, agree on a listing agent and reduce the listing prices

[and] acknowledge the properties were to be listed and sold in their current condition." Appealed Order at 8. Critically, Wife was not ordered to do any of these things in either the dissolution decree or order adopting the modification settlement. The finding of contempt was an abuse of discretion.

## Attorney's Fees

[23] To support his testimony that he incurred attorney's fees, Husband submitted his Respondent's Exhibit C, which provides in full:

Olson Law Office – Ashley – Attorney Fee Summation

| | |
|---|---|
| March | $ 1,750.00 |
| April | $ 600.00 |
| May | $ 4,075.00 |
| June | $ 895.00 |
| July | $ 4,625.00 |
| August | $ 4,750.00 |
| September | $ 4,200.00 |
| October | $ 3,390.00 |
| November | $ 3,955.00 (7.8 paralegal, 3.7 attorney prep on 10-4 |
| | $28,240.00 and 9 hours on 10-5) |

[24] The trial court ordered Wife to pay $15,000.00 of the fees, reasoning:

> [Husband] incurred attorney fees in excess of $28,000.00 in defending [Wife]'s Rule to Show Cause and in prosecuting his own. The Court finds that the fees were reasonable and that a substantial portion was incurred because of [Wife]'s lack of cooperation and unreasonable interpretation of the terms of the Settlement Agreement.

Appealed Order at 9.

[25] A trial court may impose sanctions to compensate a party for injuries incurred as a result of contempt and this may include attorney's fees. *Witt*, 964 N.E.2d at 204. We review for an abuse of discretion and reverse only when there is no evidence to support the award. *Id.* Here, assuming that Wife unreasonably interpreted the settlement agreement, there is no evidence that she was in contempt of court. The attorney's fees award may not be justified as a sanction for Wife's contempt.

[26] Husband testified that he "had filed for frivolous litigation fees." (Tr. Vol. II, pg. 54.) But it is not apparent that the partial fees award included any compensation for frivolous litigation. The trial court did not reference a statutory basis and did not specifically address the parties' respective financial positions. *See In re Marriage of Lewis*, 638 N.E.2d 859, 861 (Ind. Ct. App. 1994) (observing that misconduct directly resulting in added litigation expense may be considered in awarding attorney's fees in a dissolution proceeding, but the court must consider the respective economic conditions of the parties). As the trial court observed in its order, Wife had filed two motions for appointment of a receiver and a motion to have the elected judge hear the case. But these motions were summarily denied and did not lead to protracted litigation. And Husband's Exhibit C, which appears to include charges for one month before the instant litigation ensued, does not allocate any charge to a particular task performed. In short, the $15,000.00 award appears to be supported only by the trial court's erroneous conclusion that Wife was in contempt and should be

sanctioned therefor. The sanction order is an abuse of the trial court's discretion.

# Conclusion

The motion for contempt against Husband was properly denied in that his actions were found to be inadvertent and not willful. Lacking evidentiary support, the contempt order against Wife must be reversed as an abuse of the trial court's discretion. The award of attorney's fees as a sanction for contempt is also an abuse of the trial court's discretion.

Affirmed in part; reversed in part.

Najam, J., and Crone, J., concur.