

I N T H E

# Court of Appeals of Indiana

Deitra Mangrum and Randy Mangrum,

*Appellants-Petitioners*

v.

Randi Mangrum and Bryce Walker,

*Appellees-Respondents*



FILED

Apr 30 2026, 9:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

April 30, 2026

Court of Appeals Case No.
25A-MI-2003

Appeal from the Lake Circuit Court

The Honorable Marissa J. McDermott, Judge

Trial Court Cause Nos.
45C01-2501-MI-43
45C01-2501-MI-44

---

**Opinion by Chief Judge Tavitas**

Judges Weissmann concurs.

Judge Foley concurs in part and dissents in part with separate opinion.

**Tavitas, Chief Judge.**

## Case Summary

[1] Deitra and Randy Mangrum (collectively, "Grandparents") appeal the trial court's termination of a grandparent visitation order. Grandparents argue that the trial court erred by granting a motion for change of judge and by terminating the grandparent visitation order. Although we conclude that Grandparents waived the change of judge issue, we agree that the trial court abused its discretion by terminating the grandparent visitation order. Accordingly, we reverse and remand.

## Issues

[2] Grandparents raise two issues, which we restate as:

      I.    Whether the trial court erred by granting a motion for change of judge.

     II.    Whether the trial court abused its discretion by terminating the grandparent visitation order.

## Facts

[3] Grandparents are the parents of Randi Mangrum ("Mother"), and Mother and Bryce Walker ("Father") are unmarried and are the parents of B.W., born in

January 2020, and A.W., born in November 2021 (collectively, "Grandchildren").[1] Grandparents live in Skokie, Illinois, and Mother, Father, and Grandchildren live approximately one hour away in Griffith, Indiana. Grandparents drove to Indiana once a month to visit with Grandchildren. In December 2022, however, Mother stopped contact with Grandparents over what Grandmother described as a minor scheduling issue during the COVID-19 pandemic.

[4]     In August 2023, Grandparents filed petitions for grandparent visitation. Grandparents alleged that Mother had a history of mental illness; that Mother refused to allow Grandparents any visitation or communication with Grandchildren; and that maintaining a relationship with Grandparents was in Grandchildren's best interest. The trial court held a hearing on Grandparents' petitions in March 2024. The trial court granted Grandparents' petitions and entered findings of fact and conclusions thereon as follows:

> 12. Grandparents take special care to avoid upsetting or overwhelming Mother due to her history of mental illness and don't want Mother to feel that they are interfering with or suffocating Mother's family.

---

[1] At the time of the June 2025 hearing in this matter, Mother and Father had another child, Z.W., who was one year old, and Mother was pregnant with a fourth child. This grandparent visitation order does not address the younger children.

13. Grandparents have always behaved at the Mother's behest when it comes to the children. If the Mother said to visit, they did. If the Mother said not to visit, they didn't.

14. Grandmother testified that Mother has many expectations as to how the visits should go. Mother complained that Grandmother takes too many pictures and videos of [Grandchildren] during the visits.

15. The parties have many relatives, including great-grandparents, aunts, and cousins, that [Grandchildren] have been unable to get to know as a result of Mother's decisions.

16. Father maintained contact with Grandmother even after December 2022, often sending Grandmother photos of [Grandchildren] and indicating that he wanted Grandparents to be a part of [Grandchildren]'s lives.

17. Mother testified that [Grandchildren] have never left their home without her present. When this Court questioned how [Grandchildren] would react to attending school for the first time, the Mother indicated that she would homeschool [Grandchildren] on the weekends when she was not working. [Grandchildren] have never even been away from their home with just their Father. Mother must always be present.

18. Mother believes that visitation with Grandparents will traumatize [Grandchildren] because they will be away from Mother. It should be noted that the Mother is employed, and [Grandchildren] stay home with their Father while the Mother is at work.

* * * * *

Mother sets lofty and sometimes fluctuating expectations on Grandparents' time with [Grandchildren].  There is no evidence before the Court that Grandparents have ever circumvented or interfered with Mother's parenting decisions.  They have always respected her rules and abided by her requests regarding the children and tried to be flexible as her requests changed.

[Grandchildren] loved their visits with Grandparents, playing games, coloring, and enjoying time together.  There is no evidence that Grandparents did anything that can be construed as being contrary to the best interests of [Grandchildren] or Mother, for that matter.  Mother's reasons for cutting off visitation seem baseless and arbitrary.  The fact that [Grandchildren] are somewhat isolated from people, with the exception of their parents and siblings, makes contact with relatives, such as Grandparents even more crucial to their development.

This Court now grants the Petition for Grandparent Visitation and finds it to be in the best interest of [Grandchildren] to exercise visitation with Grandparents . . . .

Appellants' App. Vol. II pp. 119-20.  The trial court then set a visitation schedule between Grandparents and Grandchildren.[2]

Almost immediately, Mother filed a petition to modify visitation because the visitation interfered with Father's "50/50 custody" and interfered with Grandchildren's "homeschooling activities and groups."  *Id.* at 173.

---

[2] Mother appealed the trial court's decision and sought an emergency stay of the visitation schedule.  This Court denied Mother's motion for an emergency stay.  Ultimately, Mother's appeal was dismissed in October 2024 after she failed to file an appellant's brief.  *See Mangrum v. Mangrum*, Case No. 24A-MI-832.

Grandparents had one visitation with Grandchildren, but then Mother and Father cut off communication and denied further visits.

[6] On June 19, 2024, Grandparents filed a petition for an emergency hearing on contempt. Grandparents alleged that Mother had failed to comply with the trial court's visitation order; Mother had listed her home for sale; and Grandparents believed that Mother had "plans to flee the Court's jurisdiction." *Id.* at 124. The trial court held a hearing on the petition on October 22, 2024. At the hearing, Mother testified that she stopped the visitations because: (1) Mother and Father are living separately and doing "50/50 custody"; (2) Grandchildren are doing a homeschool program on the weekends; and (3) Grandchildren are in activities and programs on the weekends. *Id.* at 152.

[7] The trial court entered an order finding Mother and Father in contempt as follows:

> Although the parties had previously used Facebook to communicate by video, Mother at some point opted to no longer use Facebook as a social media platform. Thus, [G]randparents could not contact [Grandchildren] for video calls. The Court requested that Mother choose a suitable platform for video calls, and Mother chose "Meet."
>
> Upon the completion of one visit, Mother did not return phone calls and did not answer the door. During one particular instance, Grandmother indicates that both Father and Mother's vehicles were in the driveway with no answer at the door. In addition, Father recites the same address to the Court as Mother but indicates he "uses" Mother's address and that they are no longer a couple residing in the same home. The Court finds

Mother and Father's testimony regarding this issue to be not credible.

Mother also indicates the children are now participating in a "co-op" for home-schooled children that takes place on the weekends. The Court finds this to be an attempt on Mother's part to make [G]randparent visitation impossible.

The Court finds [Mother and Father] in contempt of this Court's March 7, 2024 Order on Grandparent Visitation Schedule. In order to purge themselves of contempt, [Mother and Father] are ordered to resume the grandparent schedule that was previously ordered within two weeks of today's date, providing the grandparents with an alternative schedule if the weekend overnight(s) no longer works for them. Failure to meet the purge for the contempt finding may result in additional sanctions being imposed including court costs, fines, and/or a jail sentence.

The Court orders [Mother and Father] to pay attorney fees, each being responsible for one half, and is entered as a judgment in favor of [Grandparents] with one half of that judgment, $377.50, being assessed against [Mother], and the remaining $377.50 to be assessed against [Father], to be paid within 30 days.

The Court notes that [Mother and Father] were excused from the courtroom given their inappropriate behavior.

*Id.* at 127-28.

[8] On October 23, 2024, Mother filed another motion to modify grandparent visitation due to Mother's and Father's "50/50 custody" arrangement and because Grandchildren are "allergic to dogs." *Id.* at 178. On October 24, 2024, Mother filed a motion for a new judge. On October 28, 2024, Mother filed a

motion to reconsider the contempt finding with a new judge. The trial court denied Mother's motion to modify and motion to reconsider the contempt finding with a new judge. On November 12, 2024, the trial court, however, granted Mother's motion for change of judge "pursuant to Trial Rule 76."[3] *Id.* at 180. Grandparents made no objection to the change of judge.

[9] Judge Marissa McDermott was then assigned this matter. On February 5, 2025, Mother filed a motion to terminate the grandparent visitation due to: (1) a significant change in circumstances; (2) a violation of parents' rights; (3) Grandchildren's "health"; and (4) the children's "best interest[s]." *Id.* at 182. Mother also filed a motion for a stay of the grandparent visitation pending a hearing, which the trial court denied. Mother then filed another motion for stay, which the trial court also denied. Mother then filed another motion to terminate the grandparent visitation due to: (1) changes in Mother's and Father's custody arrangement; (2) Grandchildren are "allergic to dogs"; (3) a threat to Mother's health from stress; (4) interference with Grandchildren's activities and schooling; and (5) interference with Mother's and Father's parental rights.[4] *Id.* at 184-85.

---

[3] Initially, the matters were assigned to Judge Calvin Hawkins on December 6, 2024. Due to a conflict of interest, Judge Hawkins recused, and the matters were transferred to Judge Marissa McDermott on January 13, 2025.

[4] On April 9, 2025, the trial court held a status hearing and contempt purge review hearing. The trial court found that Mother and Father had failed to purge the contempt, appointed counsel for Mother and Father for the contempt proceedings, and set the matter for an additional hearing. Mother appealed this order, and this Court dismissed Mother's appeal because the order was not a final judgment and the order had not been certified for discretionary interlocutory appeal. *See Mangrum v. Mangrum*, Case No. 25A-MI-1084.

[10]     The trial court held a hearing on Mother's petition to terminate the grandparent visitation order on June 6, 2025. Mother testified that Father moved out in March 2024; Mother and Father were sharing custody of the children; and Grandchildren did not want to visit Grandparents. Grandmother testified that Grandchildren were happy with the one visit they had with Grandparents. The trial court granted Mother's petition to terminate the grandparent visitation order. The trial court concluded that the grandparent visitation order could be terminated if it served the best interests of Grandchildren and a substantial change was not required. The trial court, however, did find the following substantial changes:

> a. The increased age of [Grandchildren] since the entry of the June, 2024 Order.
>
> b. The separation of the Parents and the established [sic] of a 50/50 custody arrangement between them.
>
> c. The membership of the Parents and [Grandchildren] in a homeschooling cooperative, and the time involved with that.
>
> d. The increased number of activities the [Grandchildren] are involved in.
>
> e. The wishes of the older Child to not spend time with Grandparents.
>
> f. The addition of another small child to the family, as well as an expected child.

Appellants' App. Vol. II p. 38.  The trial court concluded:

> 14.  Based on the evidence presented, this Court finds that
> Mother has proven that a modification of grandparenting time to
> terminate the March, 2024 Grandparent Visitation Order IS in
> [Grandchildren]'s best interest.
>
> 15.  The court now ORDERS that the Grandparent Visitation
> Order of March, 2024 is hereby TERMINATED.
>
> * * * * *
>
> 17.  The court closes by expressing its wish that [the] parties
> might be able to reconcile and establish some agreed contact
> between [Grandchildren] and Grandparents.  But the court
> cannot find that [Grandchildren] would benefit from any
> forced or compelled contact with Grandparents.

*Id.* at 39.  Grandparents filed a motion to correct error, which the trial court
denied.  Grandparents now appeal.

## Discussion and Decision

### I.  Mother's Motion for Change of Judge

First, Grandparents challenge the trial court's grant of Mother's motion for a
change of judge under Indiana Trial Rule 76.[5]  In general, the interpretation of

---

[5] At the time of Mother's motion for a change of judge, Indiana Trial Rule 76 provided:

> (B)  In civil actions, where a change may be taken from the judge, such change shall be granted
> upon the filing of an unverified application or motion without specifically stating the ground
> therefor by a party or his attorney.  Provided, however, a party shall be entitled to only one [1]
> change from the judge.  After a final decree is entered in a dissolution of marriage case or

the Indiana Trial Rules is a "question of law, which we review de novo." *In re Paternity of V.A.*, 10 N.E.3d 61, 63 (Ind. Ct. App. 2014). Indiana Trial Rule 76 "provides that the granting of a motion to change judge is automatic if made within the time limitations established by the rule." *Mann v. Russell's Trailer Repair, Inc.*, 787 N.E.2d 922, 924-25 (Ind. Ct. App. 2003), *trans. denied*. "If the motion is not within the time limitations, we review the trial court's ruling on a motion for change of judge for an abuse of discretion." *Id.*

[12] Grandparents argue that Mother's motion for change of judge was filed as an automatic change under Trial Rule 76, but the motion was untimely. We, however, note that Grandparents did not raise this issue before the trial court. In fact, Grandparents made no objection to Mother's motion for change of judge. In *Wolfe v. Wolfe*, 793 N.E.2d 1164, 1167 (Ind. Ct. App. 2003), *trans. denied*, a party argued on appeal that the trial court failed to follow the proper procedure in granting a motion for change of judge. The party, however, did not object to the trial court and did not raise the issue until appeal. We

---

paternity case, a party may take only one change of judge in connection with petitions to modify that decree, regardless of the number of times new petitions are filed. The Rules of Criminal Procedure shall govern proceedings to enforce a statute defining an infraction.

(C) In any action except criminal no change of judge or change of venue from the county shall be granted except within the time herein provided. Any such application for change of judge (or change of venue) shall be filed not later than ten [10] days after the issues are first closed on the merits. Except:

(1) in those cases where no pleading or answer may be required to be filed by the defending party to close issues (or no responsive pleading is required under a statute), each party shall have thirty [30] days from the date the case is placed and entered on the chronological case summary of the court as having been filed;

* * * * *

Trial Rule 76 was amended effective February 1, 2026.

concluded that the party "waived any such argument on appeal by failing to object to the trial court's action at the time it granted the motion and assigned the panel." *Wolfe*, 793 N.E.2d at 1167. Similarly, Grandparents did not raise this issue until their appeal in this matter. As in *Wolfe*, we conclude that Grandparents waived this issue.

## II. Termination of Grandparent Visitation Order

[13] Next, Grandparents challenge the trial court's termination of the grandparent visitation order. The Grandparent Visitation Act provides "[t]he court may modify an order granting or denying [grandparent] visitation rights whenever modification would serve the best interests of the child." Ind. Code § 31-17-5-7. We review a trial court's order modifying grandparent visitation for an abuse of discretion. *Fergason v. Brooks*, 189 N.E.3d 1102, 1104 (Ind. Ct. App. 2022). A trial court "abuses its discretion when its decision is contrary to law or is against the logic and effect of the facts and circumstances before the court." *Id.*

[14] Our Supreme Court has recognized that "[a] child's relationship with his grandparents is important, and can deserve protection under the Grandparent Visitation Act." *In re Visitation of M.L.B.*, 983 N.E.2d 583, 584 (Ind. 2013). The Grandparent Visitation Act "contemplates only occasional, temporary visitation that does not substantially infringe on a parent's fundamental right to control the upbringing, education, and religious training of their children." *Id.* at 586. A "petitioning grandparent carries a high burden on the **initial petition**

for grandparent visitation rights."[6] *In re Adoption of A.A.*, 51 N.E.3d 380, 390 (Ind. Ct. App. 2016) (emphasis added), *trans. denied*. Here, however, the trial court was addressing a modification of an existing grandparent visitation order, not the initial petition. "[T]he petitioner seeking a subsequent change in a grandparent visitation order bears the burden of showing the order should be modified." *Id.* As the moving party, Mother, thus, "bore the burden of demonstrating that modification of the existing visitation order would serve [Grandchildren's] best interests." *Id.*

[15] Grandparents argue that Mother was required to demonstrate a substantial change. The Grandparent Visitation Act, however, requires only that modification "serve the best interests of the child," and does not require a substantial change in circumstances. Ind. Code § 31-17-5-7. A comparison of Indiana Code Section 31-17-2-21, which governs the modification of a child custody order, and Indiana Code Section 31-17-4-2, which governs the modification of parenting time, demonstrates this difference. To modify a child custody order, Indiana Code Section 31-17-2-21 requires both a "substantial

---

[6] Indiana Code Section 31-17-5-1 governs the initial petition and provides:

    (a) A child's grandparent may seek visitation rights if:

        (1) the child's parent is deceased;

        (2) the marriage of the child's parents has been dissolved in Indiana; or

        (3) subject to subsection (b), the child was born out of wedlock.

    (b) A court may not grant visitation rights to a paternal grandparent of a child who is born out of wedlock under subsection (a)(3) if the child's father has not established paternity in relation to the child.

change" in one or more factors and a conclusion that modification is in the child's best interests. A modification of parenting time, however, only requires that "modification would serve the best interests of the child." I.C. § 31-17-4-2. This Court has held that, "unlike a modification of physical custody, a modification of parenting time does not require a showing of a substantial change." *Miller v. Carpenter*, 965 N.E.2d 104, 110 (Ind. Ct. App. 2012). Similarly, here, Indiana Code Section 31-17-5-7 requires only that modification of the grandparent visitation order serve the best interests of the child.

[16] The trial court here found that termination of the grandparent visitation order was in Grandchildren's best interests due to the increased age of Grandchildren; the new custody arrangement between Mother and Father; Grandchildren's homeschooling and extracurricular activities; the wishes of the older grandchild; and the addition of another grandchild and an expected grandchild.[7] The timeline of events, however, is important and establishes that the trial court abused its discretion.

[17] In March 2024, the trial court granted Grandparents' request for grandparent visitation. Almost immediately, Mother sought to terminate the order because Mother and Father were suddenly splitting custody of their children and

---

[7] Although not raised by Grandparents, we note that the trial court engaged in extensive questioning of the parties during the hearing on Mother's petition to terminate the grandparent visitation order. While a trial court may question a witness, *see* Ind. Evid. R. 614, the questioning must be "conducted in an impartial manner" and should not cause prejudice. *In re Adoption of Johnson*, 612 N.E.2d 569, 572 (Ind. Ct. App. 1993), *trans. denied*.

Mother had enrolled Grandchildren in a weekend homeschooling group. Mother only allowed Grandparents one visit with Grandchildren before cutting off all communication again.

[18] Grandparents filed a contempt petition, and after a hearing, the trial court found Mother and Father in contempt. The trial court did not find "credible" Mother's and Father's testimony that they were not living together and were sharing joint custody. Appellants' App. Vol. II p. 128. The trial court also found the weekend homeschooling to be "an attempt on Mother's part to make grandparent visitation impossible." *Id.* Mother did not appeal this order; instead, she immediately sought a change of judge and filed another motion to terminate the grandparent visitation order.

[19] The new judge held a hearing on Mother's motion to terminate the grandparent visitation order and granted Mother's motion. Although only a few months before, the trial court had found Mother's excuses to be not credible, the new judge then relied upon the same reasoning and Mother's self-serving testimony that the older grandchild did not want to visit Grandparents to terminate the grandparent visitation order. We conclude that Mother identified no new valid reasons to terminate the grandparent visitation order.

[20] We addressed a similar issue in *A.A.*, 51 N.E.3d 380. There, in arguing for modification of the grandparent visitation order, the parent "relied on evidence and testimony about events that pre-dated" the trial court's orders. *Id.* at 390. We held that, "[b]y presenting no new evidence to support termination of

visitation, Parents' motion to terminate amounted to nothing more than an attempt to re-litigate issues already brought before the court and affirmed on appeal." *Id.* We further noted that the "lack of communication between Grandparents and Children was a direct result of Parents' contumacious conduct." *Id.* We concluded: "Where Parents did not present any evidence showing a change of circumstances to support modification, let alone termination, of the visitation order, the trial court did not abuse its discretion in denying Parents' petition to terminate grandparent visitation rights." *Id.*

[21] Similarly, here, by presenting evidence already rejected by the trial court in the initial order and in the contempt order, Mother's petition to terminate the grandparent visitation order is nothing more than an attempt to re-litigate issues already litigated. The timeline demonstrates that Mother has continuously objected to the grandparent visitation order and refused to comply with the order. The trial court's termination of the grandparent visitation order essentially rewarded Mother for her "contumacious conduct." *D.G. v. W.M.*, 118 N.E.3d 26, 31 (Ind. Ct. App. 2019), *trans. denied*. Mother's continued conduct resulted in Grandparents being "systematically deprived of the visitation awarded to them." *Id.* Mother's motion "invited the trial court to reward her persistent non-compliance." *Id.*

[22] Our Courts have recognized the importance of a relationship between children and their grandparents and extended family. *See, e.g.*, *M.L.B.*, 983 N.E.2d at 584 (noting that a "child's relationship with his grandparents is important, and can deserve protection under the Grandparent Visitation Act"); *Sightes v. Barker*,

684 N.E.2d 224, 231 (Ind. Ct. App. 1997) (discussing the benefits to both children and grandparents), *trans. denied*. Mother's continuous conduct in violation of court orders has deprived Grandchildren of this important relationship.

[23] We note that, although Mother filed a motion to terminate visitation, the trial court had the discretion to modify the visitation instead. We would not find an abuse of discretion if the trial court had simply modified the visitation, but to cut off all contact with Grandparents based upon these facts was an abuse of discretion. The trial court here had many options available to it to maintain this relationship. Under these circumstances, we conclude that the trial court abused its discretion by granting Mother's motion to terminate the grandparent visitation order.

## Conclusion

[24] The trial court abused its discretion by granting Mother's motion to terminate the grandparent visitation order. Accordingly, we reverse and remand for proceedings consistent with this opinion.

[25] Reversed and remanded.

Weissmann, J., concurs.

Foley, J., concurs in part and dissents in part with separate opinion.

ATTORNEY FOR APPELLANTS

Robert A. Plantz
Robert A. Plantz & Associates
Merrillville, Indiana


APPELLEES PRO SE

Randi Mangrum
Griffith, Indiana

Bryce Walker
East Chicago, Indiana

**Foley, Judge, concurring in part, dissenting in part.**

[26] While I concur in all respect with Section I of the majority opinion, I respectfully dissent as to Section II of the majority opinion.

[27] We give substantial deference to the trial court in family law matters, *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002), and I believe that the trial court's decision to terminate the grandparent visitation order in this case was within its discretion and not an abuse of discretion.

[28] "The Grandparent Visitation Act contemplates only occasional, temporary visitation that does not substantially infringe upon a parent's fundamental right to control the upbringing, education, and religious training of their children." *In re Visitation of L-A.D.W.*, 38 N.E.3d 993, 998 (Ind. 2015) (citing *K.I. ex rel. J.I. v. J.H.,* 903 N.E.2d 453, 462 (Ind. 2009)). While a grandparent has a high burden when initially petitioning for visitation rights, a petitioner seeking a

subsequent change in the visitation order, as Mother did in this case, must demonstrate that modification of the visitation order, or termination of the order in the present case, would serve Grandchildren's best interests. *See In re Adoption of A.A.*, 51 N.E.3d at 390.

[29] I believe that Mother met her burden, the trial court applied the correct legal standard, and the facts found by the trial court were supported by the record. Mother and Father's separation, the weekend homeschool co-op, the birth of a subsequent child, and the Grandchildren's increased activities occurred after the granting of the grandparent visitation order. Those facts were disclosed during the contempt hearing, and the trial court found at least some of those facts to be a pretext by Mother and Father to avoid visitation and found that Mother and Father lacked justification for withholding the court-ordered visits. Nonetheless, because those events occurred after the hearing establishing grandparent visitation and had not otherwise been considered in the context of a modification or termination request, they may serve as a basis for demonstrating that termination of the grandparent visitation order is in the best interests of the Grandchildren.

[30] The majority note that Mother's "contumacious conduct" should not be rewarded, and I agree. *See supra* p. 16. However, the trial court based its termination of the grandparent visitation order on more than just the lack of visits between Grandparents and the Grandchildren. There remains sufficient evidence to support the trial court's finding that the best interests of the Grandchildren were served by terminating grandparent visitation even if the

frequency of visits between the Grandchildren and Grandparents is not considered. The trial court rightly considered the disruption to the Grandchildren's schooling and activities, the impact of a 50/50 parenting time schedule, and that only the older two of the four children were subject to the grandparent visitation order in support of its decision to terminate the grandparent visitation order.[8]

[31] This case does present a unique situation where two separate trial judges appear to have come to separate and distinct conclusions regarding Mother's credibility. However, alternate findings from the same factual presentation do not necessarily lead to the conclusion that an abuse of discretion has occurred. Our deferential standard of review is sufficient to accommodate such an instance.

[32] It is indeed tragic when families are beset by conflict or issues that result in the estrangement of grandparents from their grandchildren. And in this instance, there is no doubt that Mother continually resisted visitation between her Grandchildren and Grandparents. Nonetheless, the law demands that a custodial parent's upbringing of a child remains paramount and that the best interests of the children, not the parents or grandparents, control.

---

[8]Mother had a child after entry of the grandparent visitation order and was expecting at the time of the termination hearing.

[33]    Granting substantial deference to the trial court as we do in family law matters, I do not believe that the trial court abused its discretion when it granted Mother's petition to terminate the grandparent visitation order, and I would vote to affirm the trial court's order.